Argued May 23, affirmed in part, reversed in part, and remanded
for further proceedings June 28, reconsideration allowed August 1,
former opinion adhered to August 6, petition for review
denied September 4, 1974

## LaMAR'S ENTERPRISES, INC. et al, *Petitioners,*
## *v.* OREGON LIQUOR CONTROL COMMISSION,
### *Respondent.*

524 P2d 336

Argued and submitted May 23, 1974.

*Bruce W. Williams,* P. C., Salem, argued the cause and filed the brief for petitioners.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Petitioner corporation was the holder of a Class B Liquor Dispenser's License issued by respondent Oregon Liquor Control Commission (OLCC). Service permittee Sharley was its president and service permittee Sellers is secretary-treasurer and sole stockholder. Following extensive investigation by agents employed by or assigned from other police agencies to the Commission, its Administrator issued Notices of Violation to each of petitioners charging them with maintaining a lewd and insanitary establishment. A hearing was duly held on two different days before a Hearing Examiner of the Commission. He made detailed Findings of Fact, concluded therefrom that the charges were substantiated "beyond a reasonable doubt," and that the violations were continued over a sufficient length of time to establish that petitioner maintained a lewd and insanitary establishment and recommended that the licenses of each petitioner be cancelled.

The Commission held a hearing, entered Findings of Fact and conclusions consistent with those of its

examiner and entered its order cancelling the Class B Liquor Dispenser's License of the corporation and the permittee license of both Sharley and Sellers. Each petitions for review of the order.

There are three assignments of error:

1) Denial of due process by prehearing publicity in the mass media which precluded a fair hearing;

2) The statutes and administrative rules applied here deny due process of law; and

3) Insufficiency of the evidence to warrant the finding that petitioners maintained an insanitary establishment.

■ By the first assignment, petitioners contend because the OLCC Administrator announced to the news media, coincidentally with the issuance of the Notices of Violation, that he intended to seek a revocation of the licenses involved, each was denied a fair hearing before the Commission.

There is no merit in this contention. Nothing in the record supports the claim that a fair hearing was denied, nor do petitioners point to anything other than the Administrator's comment referred to above to support it. There is not even a claim that the hearing examiner who conducted the initial hearings or the Commission, which alone has the power to revoke or suspend a license as well as to issue one, "prejudged" these matters.[1] *Palm Gardens, Inc. v. OLCC,* 15 Or App 20, 514 P2d 888 (1973), Sup Ct *review denied*

---

[1] The record reveals the following comment by petitioner's counsel in the course of his final argument before the Hearing Examiner:

"* * * I appreciate your courtesies and the conduct of this hearing which is almost judicial in nature * * *."

(1974); *Matthew v. Juras,* 16 Or App 524, 519 P2d 402, Sup Ct *review denied* (1974). The Administrator has the duty to present to the Commission alleged violations by licensees. In this particular, his role, though not identical, may be analogized to that of a district attorney or a city attorney in any civil or criminal law violation proceeding.

■ We have recently considered at length the constitutional challenges to the statutes and administrative rules here attacked which are raised by petitioners' second assignment of error. *Palm Gardens, Inc. v. OLCC,* supra; *Starview, Inc. v. OLCC,* 15 Or App 11, 514 P2d 898 (1973). *See also: California v. La-Rue,* 409 US 109, 93 S Ct 390, 34 L Ed 2d 342 (1972). There we expressly held that the term "lewd," as used in ORS 472.180 (5), was not susceptible to attack on the due process ground of vagueness here asserted. We adhere to those holdings. Here petitioners were charged with maintaining a "lewd and insanitary" establishment.

ORS 472.180 (5) provides:

"The commission may cancel or suspend any license granted if it finds:

"* * * * *

"(5) That the licensee maintains a noisy, lewd, disorderly or insanitary establishment or has been supplying impure or otherwise deleterious beverages or food."

We note also that ORS 472.310 (6) provides:

"It shall be unlawful:

"* * * * *

"(6) For any licensee of the commission to maintain a noisy, lewd, disorderly or insanitary establishment or to supply impure or otherwise deleterious alcoholic beverages."

■ The Commission and the Hearing Examiner both found facts[2] sufficient to support the conclusion that the petitioners did maintain a "lewd" establishment within the meaning of ORS 472.180 (5). There is overwhelming evidence to support it. The assignment is without merit.

Lastly, petitioners contend there was insufficient evidence to support the Commission's finding that LaMar's maintained an insanitary establishment under ORS 472.180 (5) or 472.310 (6). In so doing, petitioners rely on *Starview, Inc. v. OLCC*, supra.

■ In that case, we considered the meaning of the word "maintain" in ORS 472.180 (5). We held that one isolated instance, standing alone, does not establish "maintaining" within the statute. There must be evidence of other circumstances in addition to a single

---

[2] The Oregon Liquor Control Commission stated in its Findings of Fact:

"LaMars Enterprises, Inc., an Oregon corporation (licensee) were issued a Dispenser Class B license in trade name 'LaMars' at 795 Willamette Street, Eugene, Oregon; and Larry Sharley (permittee), Mary A. Sellers (permittee), Patricia Sue Hewitt (permittee), Judith Colleen Stein (permittee) and Mary Jo K. Reynolds (permittee) were issued service permits. An investigation team of five Oregon Liquor Control Commission Inspectors and two Police Officers of the Eugene Police Department observed that on at least three occasions between December 10, 1973 and January 22, 1974, the principal officers of LaMars Enterprises maintained a lewd and insanitary establishment as they showed pornographic movies which included many sexual deviations; allowed a beverage container to be rubbed over an entertainer's vaginal area then consumed therefrom without first being sterilized; allowed both male and female employees' genitalia to be rubbed and massaged as well as the breasts of the females by patrons. Permittee Sharley (licensee corporation President) and Permittee Sellers (owner of all the licensee corporation's capital stock) are corporation members and Permittee Sharley admitted participating in the stag nights, that is stag nights for the ladies and

isolated act that supports an inference of continuity to meet the requirement of the statute. We said:

"If there is evidence of other circumstances in addition to an isolated act that supports an inference of continuity, the requirements of a statute prohibiting the 'maintaining' of a proscribed establishment may be met. * * *" 15 Or App at 14.

*See also, Neptune's Restaurant v. OLCC,* 15 Or App 16, 514 P2d 900 (1973).

■ The findings (see n 2) of the Commission include only one[3] reference to what it found to be an insanitary condition — namely that petitioners "allowed a beverage container to be rubbed [by the entertainer] over an entertainer's vaginal area then consumed therefrom without first being sterilized."[4]

---

the stag nights for the men, and Permittee Sellers admitted knowledge of what was going on. Permittee Reynolds worked in an abbreviated costume, but no evidence was produced showing she allowed anyone to touch her. Permittee Hewitt admitted allowing at least one customer to fondle her breast and Permittee Stein admitted to being a 'stag' night dancer and ample evidence was produced relative to all the dancers allowing touching and fondling of breasts and pubic area. The Commission concluded from the entire record that licensee and its permittees maintained a lewd and insanitary establishment and also allowed employees without sufficient clothing to be working in or upon the licensed premises at the dates and times charged."

[3] The Commission's finding that the petitioners "allowed both male and female employees' genitalia to be rubbed and massaged as well as the breasts of the females by patrons" is related, in our view, to its conclusion that petitioners were maintaining a lewd establishment rather than the maintenance of an insanitary condition.

[4] We note that the findings of the Commission set forth in n 2 are unclear concerning whether the "beverage container" incident described therein occurred on more than one occasion. Petitioner's brief strenuously contends that there was but one such

The sole contention advanced by the Commission in its brief relating to this assignment of error is set forth in its entirety as follows:

"It is reasonable to infer that a container that has been rubbed over the private parts of an entertainer is no longer sanitary for purposes of beverage consumption without prior sterilization."

It does not contend that such an act, standing alone, furnishes the requisite continuity.

The Findings of Fact made by the Hearing Examiner contain nothing in addition to that single incident described in the Commission's Findings concerning maintenance of an insanitary condition. We therefore conclude under the rule of *Starview, Inc. v. OLCC,*

---

incident and that there was no evidence from which it could be inferred that such incident was repeated or had previously occurred. Respondent's brief directs us to no evidence which would support such an inference. The findings of the Hearing Examiner on this matter were:

"* * * Officer Ron Griesel of Eugene Police Department convincingly testified he entered LaMars on January 7, 1974 at approximately 9:15 p.m. and observed three stag type shows and the nude dancing of four females. The three stag shows were of the pornographic type that showed sex in all its deviate forms; all four female dancers progressed from fully clothed to nude and accepted one dollar bills from the customers for the privilege of allowing the customers to fondle and kiss their breasts and rub their vaginal area. One girl, 'Diana', took a bottle of beer from a customer and rubbed the mouth of the bottle over her vagina then handed it back to the customer who proceeded to drink from this bottle; during this complete show, Larry Sharley acted as announcer; that one cocktail waitress who he can identify as Patricia Sue Hewitt, accepted a one dollar bill from a customer then allowed this customer to kiss and fondle a breast. * * *"

It is clear therefrom that the evidence adduced concerning the "beverage container" incident described by the Hearing Examiner was based upon the single incident observed by Officer Griesel during his visit on January 7, 1974, and that the Hearing Examiner's finding was so limited. Our examination of the record reveals no testimony of any other similar incident.

supra, and *Neptune's Restaurant v. OLCC,* supra, that the finding that petitioners maintained an insanitary establishment must be set aside.

In *Palm Gardens, Inc. v. OLCC,* supra, we said:

"Although a finding of maintaining a lewd establishment is sufficient under ORS 472.180 (5) to support the revocation of Palm Gardens, Inc.'s license and the warning to Michael Makin, we are remanding to the Oregon Liquor Control Commission for a determination whether these sanctions are desired by the Commission in light of our reversal of the finding that petitioners maintained a disorderly establishment and permitted or suffered disorderly conduct upon the premises. * * *" 15 Or App at 38.

■ Accordingly, we here remand this matter to the Commission for it to determine what, if any, change in the sanction of license revocation imposed by the order upon each of petitioners, it may, within the scope of its authority, wish to make. In so doing, we note that under ORS 183.480 (7) (a) and (d), our review in a contested case of an order lawful "in substance or procedure" is limited to consideration of whether the order is supported "by reliable, probative, and substantial evidence in the whole record." Thus we have no authority to express an opinion concerning the sanctions imposed in the challenged order.

Affirmed in part, reversed in part, and remanded for further proceedings in accordance with this opinion.