Argued November 18, affirmed December 16, 1974, reconsideration denied February 12, petition for review denied February 25, 1975

REMODELING CONSULTANTS, INC., *Petitioner,*
*v.* BUILDERS BOARD, *Respondent.*
528 P2d 1373

*Tyler Marshall,* Portland, argued the cause and filed the brief for petitioner.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

This is an administrative review proceeding. Petitioner Remodeling Consultants, Inc., seeks judicial review of a determination and order by respondent Builders Board that petitioner is a "builder," and must be licensed under the home builders licensing law (ORS 701.005 et seq). The Board imposed a fine of $1,000 upon petitioner for operating without a license.

The central issue is: Does petitioner's business operation come within the definition of the term "builder" in ORS 701.005 (2)?

ORS 701.005 (2) provides:

" 'Builder' means a person who, in the pursuit of an independent business, undertakes or offers to undertake or submits a bid, to construct, alter, repair, improve, move or demolish a structure or to perform any work in connection with the construction, alteration, repair, improvement, moving or demolition of a structure."

The facts are not in dispute.

The evidence offered on behalf of the state was that Mrs. Tikerpuu, a homeowner, contacted petitioner's owner/manager, Mr. Westover, about constructing a back porch, aluminum carport and concrete driveway on her premises in Portland. Mr. Westover inspected the premises and in due course submitted, and the homeowner accepted, a written contract for the job. The essential terms of the printed form contract appear in the margin.[1]

---

[1]
"Owner hereby employs REMODELING CONSULTANTS, INC. in relation to:

"To construct concrete back porch, install concrete driveway, & install aluminum carport

to residence identified by Job Address per specification number 030373 attached.

"In owner's name owner instructs and authorizes REMODELING CONSULTANTS, INC.

"(1) To have all necessary job plans prepared.

"(2) To obtain building permits, if required.

"(3) To purchase materials for the job, as required.

"(4) To make contractual agreements with crafts & trades required to complete the specified work, such sub-contractors to be licensed, insured, and carry workman's compensation covering their own employees.

"(5) To schedule job progress and expedite work flow thru substantial completion of job.

"(6) To check the job during work progress to see that it is accomplished per specification.

The evidence offered on behalf of petitioners was that its customary method of doing business is different than in the transaction with Mrs. Tikerpuu.

"(7) To order official inspections, as required.

"(8) To supervise job to its substantial completion per specifications at a total cost to owner not exceeding $1970.00 including $495.00 payable to REMODELING CONSULTANTS, INC. on substantial completion ·of specified work.

"Owner understands and agrees to the following provisions—

"(1) Any change of or addition to original job specifications that will result in an additional cost to complete will be paid for by owner at the rate of cost of material and labor plus 20% of the cost payable to REMODELING CONSULTANTS, INC., as service charge for arranging for the change or addition.

"(2) From time to time REMODELING CONSULTANTS, INC., funds may be used to make cash purchases of materials and/or labor in relation to job completion. Owner will reimburse REMODELING CONSULTANTS, INC., in like amount for these expenditures on receipt of 'Paid In Full' statements presented by REMODELING CONSULTANTS, INC., to owner.

"(3) All materials and workmanship used to complete the job are acceptable by all building codes and by standard building practices of all crafts and trades involved. Tension or pressure checks or cracks in concrete .work is an acceptable product.

"(4) Owner will pay or arrange to be paid all material suppliers on receipt of all invoices for material purchased and will pay or arrange to be paid each subcontractor for work accomplished as soon as each component of work is completed and approved.

"Owner /s/ Juri Tikerpuu
"Owner /s/ Irma Tikerpuu

"Subject to office review, and approval by planning commission and issuance of building permits REMODELING CONSULTANTS, INC. accepts employment by owner in accordance with the foregoing terms and conditions.

"REMODELING CONSULTANTS, INC. guarantees job completion per specifications for a total job price not to exceed $1970.00. If the work is accomplished at a lesser total cost

On the Tikerpuu job the homeowner paid petitioner in full, and petitioner paid the various subcontractors' bills for labor and materials, instead of requiring the homeowner to do so. Mr. Westover testified that the reason petitioner paid the laborers and materialmen direct was because of Mrs. Tikerpuu's inability to read and understand the terms of the contract. Petitioner offered testimony of another homeowner for whom it had done a remodeling job, plus the testimony of one of its subcontractors which tended to show that petitioner's usual method of doing business was as set forth in the contract.

While petitioner uses the term 'remodeling consultants' to describe its business activities, reduced to its simplest terms, petitioner's business is to act as a general contractor for individuals desiring to remodel their homes. After the homeowner has decided what he wants done, petitioner enters into a contract with the homeowner to accomplish the work—obtaining specifications, building permits and locating individual specialists and contractors. Petitioner charges a fixed fee for its services. Petitioner does not perform any of the work itself. While the job is in progress petitioner checks on the work to make certain that it is up to specifications. After the job is completed petitioner submits to the homeowner a complete

the saving will be enjoyed by owner. If the work exceeds the total cost the excess cost will be paid by REMODELING CONSULTANTS, INC.

"REMODELING CONSULTANTS, INC. guarantees to fully disclose to owner all costs involved to complete the job per specifications.

"Date: March 3, 1973

"REMODELING CONSULTANTS, INC.
"/s/ Chet Westover
(Representative)"

summary of costs. Where the job cost is less than the amount set forth in the contract, it refunds the difference to the homeowner. If the cost is more, petitioner reduces its fee by the amount of such excess or pays the difference out of its own pocket.

Petitioner argues strenuously that the Board erred in determining that it was subject to the law because (a) petitioner merely acts as a consultant to, and agent for, the homeowner; (b) petitioner does not undertake to, nor does it, perform any work; and (c) petitioner usually does not pay any of the bills for labor and materials.

The Board insists that petitioner nevertheless comes within the last clause of ORS 701.005 (2) because petitioner is "* * * a person who, in the pursuit of an independent business, undertakes or offers to undertake or submits a bid * * * to perform any work in connection with the construction, alteration, repair, improvement, moving or demolition of a structure." Further, the Board points out that petitioner's activities do not fit within any of the numerous exemptions listed in ORS 701.010.

The primary rule of statutory construction is to ascertain legislative intent. *State Highway Com. v. Rawson,* 210 Or 593, 312 P2d 849 (1957); *Banif Corporation v. Black,* 12 Or App 385, 507 P2d 49 (1973). An unambiguous statute should not be interpreted but should be enforced according to its clear language. *Whitney v. Morgan,* 9 Or App 289, 497 P2d 865 (1972); *Thomas v. SAIF,* 8 Or App 414, 495 P2d 46 (1972). Such is the case here.

Applying the statutory definition to the facts at bar, it is apparent, first that petitioner is engaged

in an independent business. Second, it is likewise true that it submitted an estimate or offer which was in the nature of a bid to "construct, alter * * * [and] improve * * * a structure." ORS 701.005 (2).

■ As we read the first clause of the above section the term "builder" includes persons such as petitioner who bid or contract to construct, alter, repair, etc.—in other words, a building contractor. The fact that petitioner performs no work itself, or that the bills for labor and materials of the various subcontractors in most instances all go to, and are paid directly by, the homeowner, while perhaps unusual, does not serve to transform petitioner's business operation to that of a "consultant" instead of a contractor. The evidence establishes that petitioner is a general contractor, not a mere consultant. It is our conclusion that the Board did not err in its finding that petitioner is a "builder" within the definition set out in ORS 701.005. The order is supported by "reliable probative and substantial evidence" as required by ORS 183.480 (7).

■ While it might be said, as the Board argues, that petitioner performs work "in connection with the construction, alteration, repair" of the premises involved in each case, we interpret the second clause of the definition, i.e., the phrase "or to perform any work in connection with the construction, alteration, repair * * *," as designed by its drafters to bring under the law a person who undertakes, offers to undertake or submits a bid to perform a portion only of the entire job.

■ Lastly, petitioner contends that the $1,000 penalty imposed by the Board was arbitrary, punitive and discriminatory and should be set aside or modi-

fied. Where as here the penalty is within the limits authorized by the builders licensing law (ORS 701.-992), it is beyond the authority of this court under the power of review granted us by the legislature to modify the penalty. ORS 183.480. *See, LaMar's Enterprises, Inc. v. OLCC,* 18 Or App 77, 85, 524 P2d 336, Sup Ct *review denied* (1974).

Affirmed.