Argued July 22, affirmed August 8, reconsideration denied September 8,
petition for review denied December 20, 1977

# MARY'S FINE FOOD, INC., *Petitioner,*
*v.*
# OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*
(CA 7990)

567 P2d 146

Ferris F. Boothe, Portland, argued the cause for petitioner. With him on the brief were Charles R. Markley and Black, Kendall, Tremaine, Boothe & Higgins, Portland.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

JOHNSON, J.

**JOHNSON, J.**

Petitioner seeks review of a final order of the Oregon Liquor Control Commission (OLCC) revoking and cancelling his Dispenser Class A license.

Petitioner was charged with "[v]iolation of OAR Chapter 845 10-185(1), in that, during the sixty-day period ending May 31, 1976, the gross receipts from the sale of food in your licensed establishment amounted to less than twenty-five percent of the gross receipts from the sale of both food and alcoholic liquor. Also, that you failed to keep a record of food sales, not including cover charge, non-edible products or alcoholic beverages." After hearing, the OLCC concluded that the violations charged had been committed and entered its final order.

Petitioner assigns as error that (1) certain findings of fact are not supported by substantial evidence, (2) the order does not explain the reasoning for revoking the license rather than suspending or issuing a warning, and (3) the regulation upon which the order is based is unconstitutional and contrary to legislative policy.

Petitioner contends the following are not supported by substantial evidence:

"* * * * *

"2. Licensee desires to operate and does so operate an 'entertainment' type of bar, consisting of music, dancing and attractive women. His primary emphasis is on entertainment and alcoholic liquor, with low emphasis on the sale of food.

"* * * * *

"4. Licensee has not operated, nor maintained, control over the restaurant portion of his licensed premises for the past three years.

"5. Licensee, for the past three years, has leased the restaurant portion of the licensed premises on a day-to-day basis to various persons, and has not maintained any supervisory control over the operation of the restaurant.

[ 437 ]

"6. During the sixty-day period ending May 31, 1976, the gross receipts from the sale of food and alcoholic liquor in the licensed premises were as follows:

| April 1 to 30, 1976 | | May 1 to 31, 1976 | |
| --- | --- | --- | --- |
| *Liquor* | *Food* | *Liquor* | *Food* |
| $17,614 | $3,325 | $17,536 | $4,470 |

"7. During the month of April, 1976, the percent of food sales to combined food and liquor sales was 15.9 percent.

"8. During the month of May, 1976, the percent of food sales to combined food and liquor total sales was 21.3 percent.

"9. Licensee failed to maintain and keep adequate records of account of food sales prior to the middle of March, 1976, and such records were not available for inspection by the Commission's inspectors."

Our review of the record indicates that Findings 2, 4 and 5 are supported by substantial evidence. In any event, they are merely descriptions of the general nature of petitioner's business.

■ As to Findings 6, 7 and 8, the OLCC investigator computed the gross receipts and food sales percentages from data supplied him by the petitioner from the premises and from petitioner's accountant. The testimony of the petitioner and his accountant as to the possible inaccuracy and incompleteness of that data goes merely to the weight to be given to the computations. The petitioner made no effort to refute the computations. The evidence was sufficient to support the finding.

■ Petitioner argues that Finding 9 is outside the scope of the proceeding because at the hearing evidence of March food sales was excluded. The record indicates that evidence of March food sales was excluded from consideration only with respect to the charge of violating the food percentage rule. The second charge, inadequate record-keeping, and the evidence received with respect to it were not restricted to the months of April and May. Both petitioner and

his accountant testified to various record-keeping problems encountered during the period probed, and the accountant testified that the March records were incomplete. Finding 9 was both within the scope of the proceeding and supported by substantial evidence.

■ Petitioner next asserts that the final order is invalid because it lacks an explanation of why the license was revoked. The only Oregon authority cited for this proposition is *Dickinson v. Davis,* 277 Or 665, 561 P2d 1019 (1977). In a dictum the court stated that the Public Utility Commissioner must articulate the factors relied on in mitigating civil penalties imposed under ORS 767.470. The issue in that case was the scope of circuit court review under ORS 756.594 and 756.598 of the Public Utility Commissioner's order. The court reversed and remanded the circuit court's decision increasing the mitigation, holding that judicial review is limited to determining whether the commissioner's order was factually efficacious and was within the range permitted by statute. *Dickinson* has no application to the present case for several reasons. First we are not here reviewing a civil penalty statute, but a regulatory law which empowers the OLCC to grant, deny, revoke and suspend licenses to accomplish a legislative purpose. Second, even if revocation by the commission is deemed to be a sanction in the same nature as a civil penalty rather than remedial, there is no mitigation. The sanction imposed, revocation, was the maximum allowed by statute. ORS 471.315(1)(a); ORS 472.180(1). Third and foremost, the scope of review is determined by the Administrative Procedures Act, ORS chapter 183, not the special procedures statutes, ORS 756.400 to 756.610, relating to the Public Utility Commissioner.

■■ ORS 183.482(8) provides:

"(8) The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(a) The order to be unlawful in substance or procedure, but error in procedure shall not be cause for

[ 439 ]

reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby; or

"(b) The statute, rule or order to be unconstitutional; or

"(c) The rule which the order enforces or upon which the order is based or dependent, is invalid under the provisions of subsection (3) of ORS 183.400; or

"(d) The order is not supported by substantial evidence in the whole record."

ORS 183.400(3) provides:

"(3) The court shall declare the rule invalid only if it finds that the rule: (a) Violates constitutional provisions or; (b) exceeds the statutory authority of the agency or; (c) was adopted without compliance with applicable rulemaking procedures."

If it is found that there is no prejudicial procedural defect in the proceedings, that the order and the rules of the commission are within its statutory authority and constitutional, and that the order is supported by substantial evidence, there is nothing more for this court to review. The choice by the commission whether to revoke, suspend, warn or to do nothing is neither a finding of fact nor a conclusion of law required by ORS 183.470.[1] If a licensee violates either the statute or the agency rules, then by statute the choice of regulatory remedies is a matter for agency discretion and is not subject to judicial review absent possible constitutional questions. *Nation v. Oregon Racing Comm.,* 21 Or App 685, 536 P2d 536 (1975); *Thoren v. Builders Board,* 21 Or App 148, 533 P2d 1388 (1975); *Remodeling Consult. v. Builders Bd.,* 19 Or App 794, 528 P2d

---

[1]The pertinent portions of ORS 183.470 are:

"Every order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record, may be accompanied by an opinion, and a final order *shall be accompanied by findings of fact and conclusions of law.* The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order. * * *" (Emphasis supplied.)

1373 (1974), Sup Ct *review denied* (1975); *LaMar's Enterprises, Inc. v. OLCC,* 18 Or App 77, 524 P2d 336, Sup Ct *review denied* (1974).

Petitioner also asserts uneven enforcement of the percentage rule. Assuming arguendo any legal merit to such argument, it is invalid as a matter of fact. Petitioner relies upon an article in the August 1976 newsletter of the Oregon Restaurant and Beverage Association based upon an interview with the OLCC administrator concerning the enforcement of the percentage rule. Petitioner argues that the article indicates the OLCC's enforcement policy is to warn and not revoke license if the licensee's percentage of food sales is above the 10-15 percent range. The article when read in its entirety, contrary to the version quoted out of context by petitioner, reveals a strict enforcement policy with license cancellation a likely sanction.

■ As to petitioner's third assignment of error, the OLCC food sales percentage regulation was held valid in *Van Ripper v. OLCC,* 228 Or 581, 365 P2d 109 (1961). Petitioner argues and sought to build a record below to show that changing times have rendered the regulation unconstitutional and adverse to the legislative policies of the Liquor Control Act enunciated in ORS 471.030. Petitioner is in effect arguing against the continued wisdom of the regulation in light of allegedly changing conditions. The proper forum for such an argument is the OLCC, by means of a petition to amend or repeal the regulation pursuant to ORS 183.390, or the legislature, not this court.

Affirmed.