Argued June 23, reversed and remanded November 21, 1978, petition
for reconsideration granted February 13, 1979

MEGDAL, *Petitioner,*

*v.*

# OREGON STATE BOARD OF DENTAL EXAMINERS, *Respondent.*

(CA 9772)

586 P2d 816

Donald W. McEwen, Portland, argued the cause
and filed the brief for petitioner.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

JOHNSON, J.

## JOHNSON, J.

This is an appeal of the Oregon State Board of Dental Examiners' (Board) order revoking petitioner's license to practice dentistry. Petitioner practices mostly in Oregon, but also maintains two offices in California, wherein he employs other dentists. Petitioner submitted to an insurance company applications for malpractice insurance for six dentists employed by him in California. The space on the application forms requesting the applicants' business address had been left blank. The Board found in effect that the business addresses were not disclosed on the applications with the intent of inducing the insurance company to believe the dentists were practicing in Oregon, rather than California, and to issue insurance at premium rates which are less than those prevailing in California. The Board concluded that the non-disclosures constituted both false and fraudulent representations, constituting "unprofessional conduct," which is grounds for license revocation under ORS 679.140(1)(c).[1]

---

[1] ORS 679.140 in pertinent part provides:

"(1) The board may discipline as provided in this section any person licensed to practice dentistry in this state for any of the following causes:

"(a) Conviction of any offense for which the court could impose a punishment of imprisonment in a state or federal penal institution if the board makes the finding required by ORS 670.280. The record of conviction or a certified copy thereof, certified by the clerk of the court or by the judge in whose court the conviction is entered, is conclusive evidence of the conviction.

"(b) Renting or loaning to any person his license or diploma to be used as a license or diploma of such person.

"(c) Unprofessional conduct, or for gross ignorance, incompetence or inefficiency in his profession.

"(d) Any violation of ORS 679.170 or 679.176.

"(2) Unprofessional conduct as used in this chapter includes but is not limited to the following:

"(a) Employing what are known as 'cappers' or 'steerers' to obtain business.

"(b) Obtaining any fee by fraud or misrepresentation.

"(c) Wilfully betraying confidences involved in the patient-dentist relationship.

"(d) Employing, aiding, abetting or permitting any unlicensed personnel to practice dentistry.

"(e) Making use of any advertising statements of a character tending to deceive or mislead the public, or which are untruthful.

"(f) Advertising professional superiority or the performance of professional services in a superior manner.

"(g) Advertising prices for professional service, unless in accord with rules developed by the board.

"(h) Advertising by means of large display, glaring light signs, or advertising containing as a part thereof the representation of a tooth, teeth, bridgework or any portion of the human head.

"(i) Employing or making use of advertising solicitors or publicity press agents.

"(j) Advertising any free dental work or free examination.

"(k) Advertising to guarantee any dental service, or to perform any dental operation painlessly.

"(l) Advertising which makes reference to any anesthetic, drug, formula, material, medicine, method or system to be used in treatment.

"(m) Advertising extractions, artificial teeth or dentures.

"(n) Habitual or excessive use of intoxicants or a controlled substance as defined under ORS 161.705, 167.203 to 167.247, 181.010, 430.325, 430.405, 471.665, 475.005 to 475.285, 475.992 to 475.995, 483.710, 680.100, 689.290, 689.410, 689.620 and this section.

"(o) Obtaining or attempting to obtain a narcotic drug or a dangerous drug, as previously defined in this section, in any manner proscribed by the rules of the board.

"(p) Prescribing or dispensing drugs outside the scope of the practice of dentistry.

"(q) Using, in any advertisement, a portrait cut, photograph or reproduced likeness, which is more than five years old of the dentist so advertising.

"* * * * *.

"(4) In determining what constitutes 'gross ignorance, incompetence or inefficiency in his profession' within the meaning of paragraph (c) of subsection (1) of this section, the board may take into account all relevant factors and practices, including but not limited to the practices generally and currently followed and accepted by persons licensed to practice dentistry in this state, the current teachings at accredited dental schools, relevant technical reports published in recognized dental journals and the desirability of reasonable experimentation in the furtherance of the dental arts.

"(5) In disciplining a person as authorized by subsection (1) of this section, the board may use any or all of the following methods:

"(a) Suspend judgment.

"(b) Place him upon probation.

"(c) Suspend his license to practice dentistry in this state.

"(d) Revoke his license to practice dentistry in this state.

Petitioner makes two assignments which we do not reach.[2] In his third assignment petitioner contends that the statutory term "unprofessional conduct" as applied to the facts here is unconstitutionally vague. The "void for vagueness" doctrine is primarily applicable to criminal statutes, although it has been applied in administrative law. *See Lane County v. Heintz Const. Co. et al,* 228 Or 152, 364 P2d 627 (1961). In actuality, the "void for vagueness" doctrine is merely part of the larger body of law concerning the constitutionality of delegation of legislative authority. *See Lane County v. Heintz Const. Co. et al, supra; Klein v. Real Est. Comm. Holbrook,* 19 Or App 646, 528 P2d 1355 (1974); Gellhorn and Byse, Administrative Law 104 (6th ed. 1974).

As a general proposition the delegation to licensing authorities, including the Board of Dental Examiners, of authority to sanction "unprofessional conduct" has been upheld. *See Board of Medical Examiners v. Mintz,* 233 Or 441, 378 P2d 945 (1963); *Ward v. Ore. State Bd. of Nursing,* 266 Or 128, 510 P2d 554 (1973); *Hurley v. Board of Dental Examiners,* 29 Or App 223, 562 P2d 1229 (1977). These cases are consistent with the trend of judicial authority since 1930, which has been not to invalidate on constitutional grounds broad delegations of legislative authority to administrative agencies. But the fact that courts have been prone to uphold broad legislative delegations does not indicate a lack of judicial concern for the problem. As recently as 1963 the United States Supreme Court divided five

---

"(e) Place limitations on his license to practice dentistry in this state.

"(f) Refuse to renew his license to practice dentistry in this state.

"(g) Take such other disciplinary action as the board in its discretion finds proper, including assessment of the costs of the disciplinary proceedings.

"* * * * *."

[2] Petitioner contends that there was not substantial evidence to support the Board's findings and that the sanction imposed by the Board was excessive.

to four over the issue of whether an act of Congress constituted an overbroad delegation. *See Arizona v. California,* 373 US 546, 83 S Ct 1468, 10 L Ed 2d 542 (1963). Justice Harlan, writing for three of the dissenting Justices, stated the underlying concern:

"* * * The principle that authority granted by the legislature must be limited by adequate standards serves two primary functions vital to preserving the separation of powers required by the Constitution. [footnote omitted] *First,* it insures that the fundamental policy decisions in our society will be made not by an appointed official but by the body immediately responsible to the people. *Second,* it prevents judicial review from becoming merely an exercise at large by providing the courts with some measure against which to judge the official action that has been challenged." (emphasis in original) 373 US at 626, 10 L Ed 2d at 604.

A more concrete manifestation of the judicial concern is the case law where courts have upheld the statutory delegation, but by statutory construction have narrowed the scope of the delegation. *See, e.g., Ore. Newspaper Pub. v. Peterson,* 244 Or 116, 415 P2d 21 (1966). *Cf. Bernard v. Bd. of Dental Examiners,* 2 Or App 22, 465 P2d 917 (1970). Alternatively, courts have increasingly subscribed to the concept advanced by Professor Davis that broad delegations of legislative authority are constitutionally permissible, provided the administrative agency adopts rules which circumscribe the delegation in order that affected parties will know the rules of the game and courts can perform a meaningful role upon judicial review. *See* Davis, Discretionary Justice: A Preliminary Inquiry (1969): Davis, A New Approach to Delegation, 36 U Chi L Rev 713 (1969). Our decision in *Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973), adopted the Davis approach with respect to the Oregon Liquor Control Commission. In *Marbet v. Portland Gen. Elect.,* 277 Or 447, 561 P2d 154 (1977), the Oregon Supreme Court implied that in the absence of an express legislative direction, it would judicially impose a requirement that an agency with a broad legislative delegation

adopt rules as a prerequisite to implementing and enforcing its authority. However, in both *Marbet* and *Sun Ray Dairy* it was recognized that flexibility is essential. Administrative agencies with broad statutory powers may be required to adopt rules defining the outer perimeters of their authority as a precondition to implementation, but agencies can also rely on case by case adjudication as a means of determining the legality of particular conduct within those perimeters. The seminal case on "unprofessional" conduct is *Board of Medical Examiners v. Mintz, supra,* which is consistent with *Sun Ray Dairy* and the implications of *Marbet.*

In *Mintz* the Board of Medical Examiners revoked a physician's license for allegedly administering drugs to induce an abortion. ORS 677.190 then provided that it was grounds for revocation for a physician to engage in "unprofessional or dishonorable conduct" and also for "procuring or aiding or abetting in procuring an abortion . . . ."[3] The trial court overruled the Board of Medical Examiners on the grounds that the conduct could not constitute "unprofessional or dishonorable conduct" unless the Board had previously adopted rules defining such conduct as unprofessional or dishonorable. The Supreme Court reversed.[4] We quote at some length from the court's opinion:

---

[3] At the time of the decision in *Board of Medical Examiners v. Mintz,* ORS 677.190 provided in pertinent part:

"The board may refuse to grant a license to any applicant who desires to practice medicine and surgery in this state or may suspend or revoke such licenses for any of the following reasons:

"(1) Unprofessional or dishonorable conduct.

"(2) The procuring or aiding or abetting in procuring an abortion. . . ."

233 Or at 443 n. 1.

ORS 677.010(1) then provided:

" 'Unprofessional or dishonorable conduct' " means conduct unbecoming a person licensed to practice medicine or detrimental to the best interest of the public."

233 Or at 443 n. 5.

[4] The procedural posture of the *Mintz* case is somewhat confusing. The allegations in the complaint before the Board of Medical Examiners and

"There is authority for the proposition that a prior formulation of specific standards by the administrative agency is necessary where the grounds for suspension or revocation is cast in broad terms. Sometimes this result is predicated upon the violation of a constitutional right to 'due process' and sometimes upon the theory that there is an invalid delegation of legislative power. * * *"

"We agree with the view expressed by the court in the *Bell case,* supra, first in regarding the prior promulgation of rules as unnecessary *under the circumstances,* and secondly in treating 'unprofessional conduct' as an adequate standard. We have previously held that the failure to specify in a statute the standards circumscribing administrative actions is not necessarily fatal. *It may be advisable for the legislature or the administrative agency to set out specific adjudicatory standards in some instances.* But this does not mean that a statute must always set out the precise instances under which it is to be operative. No matter how specific the standard or standards are stated, there is almost always a penumbra which requires the administrative agency to exercise a judgment as to whether the facts before it fall within or outside the legislative design. And delegated power to decide may be in such vague terms that it is impossible to discern the legislative policy behind the statute.

"But the statute here is not that vague. Admittedly, the term 'unprofessional conduct' does not have precise contours circumscribing its meaning. The limits between good and bad professional conduct can never be marked off by a definite line of cleavage. And the variety of forms which unprofessional conduct may take makes it infeasible to attempt to specify in a statute or regulation all of the acts which come within the meaning of the term. The fact that it is impossible to catalogue all of the

the Board's findings of fact indicated that the physician had administered drugs to induce an abortion in violation of ORS 677.190(2). In its conclusions of law, however, the Board found the physician guilty of "unprofessional and *dishonorable conduct*" in violation of ORS 677.190(1). The trial court held the Board's order was invalid, both for lack of substantial evidence and for failure to promulgate rules. The Supreme Court reversed on both issues. Since the findings of fact indicate a violation of ORS 677.190(2), the question arises why did the Supreme Court address the other issue. The answer, presumably, is because the Board had rested its decision on ORS 677.190(1).

types of professional misconduct is the very reason for setting up the statutory standard in broad terms and delegating to the board the function of evaluating the conduct in each case. * * *"

"The board's discretion is not without controls. As was noted above, the standards are those which are accepted by the practitioners in the community. The standard must be ascertained through expert opinion; except where the standard is clear as it is in the present case. The act of procuring an abortion contrary to the provisions of ORS 677.190(2) is clearly unprofessional conduct. * * *" (emphasis added) (citations omitted) 233 Or at 446-49.

The court's decision in *Mintz* was premised on the circumstances presented in that case expressly recognizing that in other instances "specific adjudicatory standards" may be necessary. In particular, in *Mintz,* the alleged unprofessional or dishonorable conduct related to a specific statutory prohibition relating to abortion and also involved standards, "accepted by practitioners in the community," which must be ascertained by the board employing its expert opinion.

In *Ward v. Ore. State Bd. of Nursing,* 266 Or 128, 510 P2d 554 (1973), the court held that acts which are inchoate of conduct expressly proscribed by the Board of Nursing enabling statute are, as a matter of law, "conduct derogatory to the morals or standards of professional nursing," under former ORS 678.111(7) and, therefore, neither expert testimony nor prior promulgation of rules was necessary. There, a nurse's license was revoked for aiding and abetting another to hold herself out as a registered nurse, in violation of former ORS 678.021(2). Similarly, in *Hurley v. Board of Dental Examiners,* 29 Or App 223, 562 P2d 1229 (1977), we relied on *Mintz* and held that an attempt to obtain a fee by misrepresentation "fell within the purview of ORS 679.140(1)(c) and constituted unprofessional conduct." 29 Or App at 226. Obtaining a fee by fraud or misrepresentation is expressly enumerated as unprofessional conduct by ORS 679.140(2)(b).

[ 227 ]

In contrast with *Mintz, Ward,* and *Hurley,* the conduct at issue here is not expressly proscribed by ORS 679.140 and is not inchoate of any of the conduct specifically proscribed by that statute. Indeed, it is doubtful that even under the broadest definition of "unprofessional conduct" the legislature intended to encompass the conduct here. Such conduct has no relationship to petitioner's professional competency, and only a remote relationship to the dentist-patient relationship. In all probability, the conduct is neither a crime nor is it grounds for relief in contract or tort.[5] Viewing the facts most favorably to the Board's position, the petitioner's alleged conduct can be categorized as sharp business practice and morally reprehensible.

It should be noted that the statute at issue in *Mintz* referred to both "unprofessional" and "dishonorable" conduct. The use of the word "dishonorable" in that statute may indicate a legislative intention to give the Board of Medical Examiners authority to sanction morally reprehensible conduct. The absence of that term in ORS 679.140 correspondingly indicates an opposite intent. The statute at issue in *Mintz* also defined "unprofessional or dishonorable conduct" in broad generalizations. *See* note 3 *supra.* In contrast, ORS 679.140(1)(c) speaks in terms of "unprofessional conduct, or . . . gross ignorance, incompetence or inefficiency." ORS 679.140(4) expressly provides that gross ignorance, incompetence or inefficiency is a matter of community standard to be determined by

---

[5]The most likely form of civil relief would have been a suit by the insurance company for equitable rescission of the insurance contract. The agent for the insurance company testified that when the company discovered the dentists were practicing in California it considered cancelling the policies, but decided otherwise because it was doubtful it had valid grounds for cancellation. It is undisputed that the answers provided by the dentists on the insurance applications were truthful. The only question on the forms that might have elicited an answer that would have indicated that the dentists were practicing in California was the blank labeled "Office Address." This blank was not filled in on the forms. The forms also asked, "Are you duly registered and licensed to practice your profession under the laws of all jurisdictions in which you practice?" All six of the applicants answered in the affirmative.

expert opinion. ORS 679.140(2) then defines "unprofessional conduct" to include seventeen specific practices which relate directly to the dentist-patient relationship, or to a dentist's physical and mental ability to perform dentistry. In addition, ORS 679.140(1)(a) assigns as grounds for revocation some forms of morally reprehensible conduct, *i.e.,* conviction of a felony, which may be unrelated to the dentist-patient relationship or a dentist's ability to perform. This specific provision in ORS 679.140(1)(a) implies that other such conduct is not grounds for sanction.

Viewing the statutory framework of ORS 679.140, we find it difficult to construe the phrase, "unprofessional conduct . . . includes, *but is not limited to* the following" contained in ORS 679.140(2) as authority for the Board to revoke the license of any dentist whose conduct the Board deems morally reprehensible. This is not to say that the legislature condones reprehensible business practices by dentists or by persons engaged in other occupations. With respect to the latter, it has not been the custom of the legislature to attempt to regulate all reprehensible business practices, presumably on the belief that in many commercial transactions the parties can protect themselves. Also, the legislature may deem the remedy of prohibiting a person from engaging in his or her chosen occupation to be overly harsh. For the same reasons, it is doubtful that the legislature intended to empower the Board with the authority to revoke a dentist's license for committing a culpable business practice that is unrelated to the quality of service rendered or the dentist-patient relationship. Here the conduct is only remotely related to the practice of dentistry in that malpractice insurance is a cost which is presumably reflected in the fees charged to patients.

■■ Although we express our doubts as to whether the conduct here is encompassed by ORS 679.140(1)(c), we do not finally decide that question. It may be that the relationship between dentists and malpractice insurers, including even the conduct at issue here, is

[ 229 ]

sufficiently related to the practice of dentistry to fall within the regulatory power embodied in the "not limited to" phrase in ORS 679.140(2). Conversely, it is arguable that that phrase only encompasses conduct similar to that enumerated in subsections (a) through (q) of ORS 679.140(2). We are reluctant to resolve that issue on the record before us except to the extent that we find that the conduct here is substantially dissimilar from that enumerated in ORS 679.140(2)(a) through (q). We hold that as a minimum, in order for the Board to exercise its authority under the "not limited to" clause, as to conduct which is substantially dissimilar from that enumerated in the statute, there must be some prior promulgation of rules. Our reasons for such requirement are implicit in the Supreme Court's decision in *Mintz* and are more thoroughly stated in our decision in *Sun Ray Dairy.* Such rules would at least provide dentists and others with notice of what is required to meet their professional responsibilities and a meaningful basis for judicial review. If the Board elects to undertake such rule making, such rules and the accompanying record may provide us with something from which we can discern a rational nexus between the rules adopted and the express legislative delegation.

Reversed and remanded.

**SCHWAB, C. J.,** dissenting.

As the majority notes, this is an appeal by the petitioner from an order of the Oregon State Board of Dental Examiners revoking petitioner's license to practice dentistry on the ground that he made knowingly false representations to his malpractice insurance carrier with the intent that the insurance carrier rely upon them.

The petitioner makes three assignments of error. He states them in his brief as:

(1) "The evidence adduced at the hearing was insufficient to sustain the Board's findings that petitioner was

guilty of unprofessional conduct, and its findings are not supported by reliable, probative, and substantial evidence."

(2) "The sanction imposed, revocation of petitioner's license to practice dentistry, does not bear a reasonable relation to the unprofessional practices found to have occurred."

(3) "The statutory phrase 'unprofessional conduct,' ORS 679.140(1)(c) is so vague and uncertain as to be constitutionally impermissible."

The majority states that it does not reach the first two assignments of error, 37 Or App at 223. In my judgment it does not reach the third assignment of error either, but, rather, reverses by reaching an issue which is not the basis of any assignment of error and then, in my judgment, by deciding that issue erroneously.

Since I would affirm the action of the Board of Dental Examiners, I find it necessary to reach the first two assignments of error, albeit little need be said to demonstrate that petitioner cannot prevail on those assignments.

As for the first assignment, it is only necessary to note that we do not review de novo, but, rather, for substantial evidence to support the Board's findings. For there is evidence that the petitioner's actions led his insurance company to insure his California employe-dentists at approximately one-quarter the premium that he would have had to pay for California malpractice insurance by creating an inference that his employe-dentists were employed in his Grants Pass, Oregon, office when in fact they were employed in his California office. The letter petitioner sent to his insurance carrier on his Grants Pass letterhead requesting the addition of the California dentists to his policy could reasonably be viewed as an implicit representation that the dentists, who were actually working in California, were employed in his Oregon office. The letter coupled with the obliteration of the office addresses on the application forms covering the

California dentists sent by petitioner's office to the insurance carrier supports a reasonable inference of conduct intended to deceive his insurance carrier.

As for the second assignment of error, it is sufficient to note that this court is not authorized to review the severity of a sanction imposed by an administrative agency.

"* * * If a licensee violates either the statute or the agency rules, then by statute the choice of regulatory remedies is a matter for agency discretion and is not subject to judicial review absent possible constitutional questions. *Nation v. Oregon Racing Comm.,* 21 Or App 685, 536 P2d 536 (1975); *Thoren v. Builders Board,* 21 Or App 148, 533 P2d 1388 (1975); *Remodeling Consult. v. Builders Bd.,* 19 Or App 794, 528 P2d 1373 (1974), Sup Ct *review denied* (1975); *LaMar's Enterprises, Inc. v. OLCC,* 18 Or App 77, 524 P2d 336, Sup Ct *review denied* (1974)." *Mary's Fine Food, Inc. v. OLCC,* 30 Or App 435, 440, 567 P2d 146 (1977).

Petitioner himself agrees that he cannot prevail upon his third and last assignment of error—that the statutory phrase, "unprofessional conduct," is so vague and uncertain as to be unconstitutional—unless this court overrules the Oregon Supreme Court. The opening sentences of his argument under this assignment of error are:

"The court should re-examine prior decisions holding the phrase 'unprofessional conduct' is not unconstitutionally vague. We recognize that the Supreme Court in *Board of Medical Examiners v. Mintz,* 233 Or 441, 378 P2d 945 (1963) * * * squarely [holds] the phrase was not impermissibly vague."

The majority reversed the Board by holding that if the conduct here involved can ever constitute "unprofessional conduct" it must first be clearly proscribed by dental board board rule. In my judgment this holding is contrary to *Ward v. Ore. State Bd. of Nursing,* 266 Or 128, 510 P2d 554, 55 ALR3d (1973); *Board of Medical Examiners v. Mintz,* 233 Or 441, 378 P2d 945 (1963); and *Hurley v. Board of Dental Exam.,* 29 Or

App 223, 562 P2d 1229 (1977). The leading case is *Mintz.* The language of *Mintz* which I find dispositive is:

> "* * * The limits between good and bad professional conduct can never be marked off by a definite line of cleavage. And the variety of forms which *unprofessional conduct* may take makes it infeasible to attempt to specify in a statute or regulation all of the acts which come within the meaning of the term. The fact that it is impossible to catalogue all of the types of professional misconduct is the very reason for setting up the statutory standard in broad terms and delegating to the board the function of evaluating the conduct in each case * * *." (Emphasis supplied.) 233 Or at 448.

The majority apparently would distinguish these cases on the ground that each involved conduct which violated some specific statute in addition to the general unprofessional-conduct statute. I perceive at least two arguments to the contrary. The first is simply that the use of the mails in connection with a scheme to defraud is a federal criminal offense, 18 USC § 1341 (1977), whether or not customarily prosecuted.

Second, I do not think that a professional licensee, having the benefit of an extensive academic as well as professional education, is treated unfairly or unreasonably surprised if he is told that fraudulent misrepresentation in connection with a matter directly related to his professional activities—a matter which could never have occurred were he not engaged in his profession—constitutes "unprofessional conduct," even in the absence of further regulatory definition. To me it is passing strange to suggest the contrary in the face of numerous opinions holding every adult, regardless of education, intelligence and sophistication, potentially criminally liable under standards no more specific than "unprofessional conduct." In *State of Oregon v. Wojahn,* 204 Or 84, 282 P2d 675 (1955), the court held that a statute which made it a crime (negligent homicide) to cause death by the driving of a motor vehicle in a "negligent manner" was not unconstitutional for lack of a sufficient standard, stating:

"* * * [T]he standard need not be defined with such precision that those affected by it will never be required to hazard their freedom upon correctly foreseeing the manner in which a matter of degree may be solved by a jury * * *." 204 Or at 137.

In *State v. Popeil,* 216 Or 140, 147, 337 P2d 303 (1959), the phrase, "by means of force likely to produce great bodily injury" was held not unconstitutionally vague. In *City of Portland v. Kreutz,* 7 Or App 618, 492 P2d 824 (1972), this court held that an ordinance making it unlawful to operate a vehicle in a manner that "endangers or would be likely to endanger any person or property was not unconstitutionally vague."

We have previously stated that the vagueness doctrine requires more specificity in statutes defining crimes than in non-penal statutes. *Palen v. State Bd. of Higher Education,* 18 Or App 442, 446-47, 525 P2d 1047 (1974). Yet, if anything, the standard involved here, "unprofessional conduct," is more precise and more explicit when applied only to a sophisticated group of professionals than the standards of many criminal statutes which are applied to all adults not mentally incompetent. It turns the law topsy-turvy to suggest that rules defining "unprofessional conduct" are essential to give fair warning to a professional licensee on the facts of this case.

For the foregoing reasons I would affirm and therefore respectfully dissent.