Argued and submitted June 9, remanded for
further proceedings November 10, 1982, petition for
attorney fee denied July 6, 1983 (63 Or App 754, 665 P2d 1258 (1983))

CASCADE FOREST PRODUCTS, INC.,
*Petitioner,*

*v.*

ACCIDENT PREVENTION DIVISION,
*Respondent.*

(No. SH-79-276, CA A23643)

653 P2d 574

Brian L. Pocock, Eugene, argued the cause for petitioner. With him on the brief was Cowling, Heysell & Pocock, Eugene.

Kay Kiner James, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

GILLETTE, P. J.

Petitioner seeks judicial review of an order by a Workers' Compensation Board (Board) referee affirming two safety citations issued by the Accident Prevention Division (APD). Because we conclude that the referee failed to make findings of fact to support certain parts of his conclusions and final order, we remand for further proceedings.

Petitioner operates a wood-products plant that produces cut stock for windows and doors. On April 11, 1979, after an APD inspection of its plant, petitioner received a citation for four violations of chapter 10 of the Oregon Occupational Health and Safety Code (Citation 1). Item 1 cited petitioner for failure to guard the blade of a radial saw; item 2 for failure to guard the blades of three inverted swing cut-off saws; items 3 and 4 for failure to guard the v-belts on two separate pieces of equipment. The citation gave petitioner seven days to correct items 1 and 3, and 30 days to correct item 2; item 4 had been cured at the time of the inspection. The citation also assessed penalties totalling $450.

On April 17, petitioner requested that the compliance date for item 2 be delayed until September 30, 1979. APD denied the request, and petitioner sought a hearing. In support of its request for an extension, petitioner argued that "[t]he extension is needed to determine a feasible method of complying with the standard."[1] By opinion and order dated August 6, 1979, the referee affirmed APD's denial, concluding that adequate guards were "available" to petitioner. Petitioner sought judicial review. We affirmed without opinion. *Cascade Forest Products, Inc. v. Accident Prevention Division,* 44 Or App 131, 605 P2d 759 (1980).

In late April, 1979, petitioner also requested a hearing on the merits of Citation 1. In May, after the correction date for item 2 had passed, APD sent a notice

---

[1] Petitioner also argued that the compliance date was unreasonable because petitioner planned to move its operations to a new plant with all new saws in later summer. If the extension had been granted, petitioner would have been spared both the penalties and compliance costs generated by item 2.

and order to petitioner pointing out that the item 2 violation had not yet been corrected. In October, APD sent petitioner a second citation (Citation 2) for petitioner's failure to correct item 2 within the period allowed for correction. Citation 2 assessed a penalty of $8,250. Nine months later, in July, 1980, petitioner announced its intention to contest Citation 2.

In August, 1980, a hearing was held on the merits of Citation 1 and on the timeliness of petitioner's challenge to Citation 2. By opinion and order dated December 8, 1981, the referee affirmed Citations 1 and 2 in all respects. This petition for judicial review followed.

While petitioner does not make specific assignments of error, we believe, on the basis of the phrasing of its "Issues on Appeal" and its extensive discussion of the evidence presented at both hearings, that petitioner seeks review under ORS 183.482(8), on the basis that the Board's decision is not supported by substantial evidence. Respondent has so understood and briefed the case. We analyze the issues surrounding Citation 1 accordingly, taking items 1 through 4 in numerical order.

## Item 1: Radial Arm Saw.

Item 1 cited petitioner for failing to have a guard on the lower half of the 12-inch blade of its Monarch radial arm saw in violation of 437-10-3-35(c). Petitioner does not contest the Board's implicit finding that the saw violated the rule at the time of APD's inspection. It argues instead, presumably as a *defense* to the violation, that the evidence showed that the saw was not in use at the time of the inspection. On cross-examination, however, petitioner's general manager testified that there was a 95 to 99 percent chance that the saw was plugged in and *available* for use in its unguarded condition. APD's safety inspector also testified that he did not see any sign or other order to defendant's employes telling them not to use the saw. Assuming such a "defense" to be pertinent, there is substantial evidence in the record to support the referee's rejection of it. Item 1 was properly sustained by the referee.

## Item 2: Inverted swing cutoff saws.

Item 2 cites petitioner for violating OAR 437-10-3-34 by failing to guard "the part of the saw that

protrudes above the top of the table or above the material being cut." Again, although petitioner's brief first asks "whether the matters described in items 1 through 4 of the citation constitute violations of the referenced safety codes," petitioner does not argue on appeal that the saws were in compliance with the pertinent regulation. Instead, it raises what appear to be affirmative defenses: (1) that petitioner had no knowledge that the saws were out of compliance; (2) that guarding was not practically feasible; (3) that guarding was not economically feasible; (4) that compliance would have caused greater dangers than noncompliance; and (5) that APD should be precluded as a matter of law from raising this violation. These defenses are identical to the objections raised by petitioner's brief to the referee.

■     The referee's order contains the following "findings and conclusions" in response to petitioner's contentions:[2]

"1.   Cascade Forest Products violated the referenced safety code * * * as alleged in item * * * 2 of citation no. [1].

"2.   It was both technologically and economically feasible to guard the inverted cutoff saws described in item #2 and that fact has been established as a matter of the law of this case by referee Kaffun's opinion and order in WCB case 79-330 which was confirmed by the Court of Appeals.

"3.   APD is not estopped from citing or penalizing the employer for violating item #2 by reason of having failed to cite the condition in the past."

Petitioner contends, however, that the referee in reality failed to address petitioner's arguments and that that failure resulted from the referee's erroneous belief that the August, 1979, order (affirming APD's denial of petitioner's request for an extension) conclusively established the existence of the item #2 violation.

---

[2] Although this section is labelled "Finding and Conclusions," it contains only conclusions. We note in passing that the order fails to make the findings of fact required by ORS 183.470(2);

"(2) A final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact and as to each ultimate fact required to support the agency's order."

However, petitioner does not separately raise the absence of findings of fact, so we do not discuss the issue.

Simple comparison of petitioner's "defenses" and the "findings and conclusions" reveals that the referee did, in fact, fail to make findings in response to two of petitioner's contentions: lack of employer knowledge and increased danger. The referee had a duty to make such findings under ORS 183.470; failure to have done so renders the order incomplete and therefore insufficient. *See Wasson v. AFSD,* 59 Or App 634, 652 P2d 358 (1982); *Hillcrest Vineyard v. Bd. of Comm. Douglas Co.,* 45 Or App 285, 608 P2d 201 (1980); *see also Graham v. OLCC,* 20 Or App 97, 530 P2d 858 (1975). The order must be remanded for findings on those two questions. We turn now to the "findings and conclusions" that the referee made with respect to the other three defenses.

■ ■ We agree with the referee that the August, 1979, order is *res judicata* on the defense of practical and technological feasibility. In that earlier proceeding, petitioner based its request for an extension in part on its assertion that it had not yet devised a "feasible" means of guarding the saws. At the hearing, both petitioner and the APD offered testimony as to the feasibility of designing and installing adequate guards. The referee found that adequate guarding for the saws was presently available, and we affirmed. That issue is now closed.

The August, 1979, order is not *res judicata* on the defense of economic feasibility, however. The referee who wrote that order did not make specific findings and conclusions about economic feasibility; indeed, at the hearing he sustained APD's objection to a line of questioning intended to explore the economic feasibility issue. By sustaining the objection, the referee expressed his apparent agreement with APD's counsel that "[f]easibility is not to be determined simply in terms of the effect on the production effort. It's OK [even] if the guards necessary to satisfy the code impair efficiency." Because petitioner was precluded from presenting evidence about economic feasibility, the resulting order cannot be *res judicata* on that question. The order under review states no other basis than *res judicata* for its conclusion that guarding was economically feasible. As with two of the other defenses, therefore, the referee's

order is not responsive to the issues in the case and must be remanded. *Wasson v. AFSD, supra.* [3]

■ Turning finally to the defense of estoppel, the referee's third "finding and conclusion" in the order under review states that APD is not estopped to cite petitioner just because it failed to cite the item 2 violation in past inspections. The referee goes on in his opinion to explain this "finding and conclusion" by adopting *in toto* the analysis in APD's brief to the Board. The brief in turn refers the reader to two attached exhibits. The exhibits are 1977 and 1980 opinions from Board referees concluding that the doctrine of equitable estoppel does not apply unless APD has actively misled an employer into believing that particular machines complied with applicable standards. According to these opinions, APD inspections that simply overlook violations do not actively mislead employers into believing that their equipment is in compliance.

Although one must travel far from the referee's order to discern its rationale—and we do not in general approve the use of this cross-reference device in administrative orders—the trail to the explanation is clear enough, and petitioner has not objected to making the trip. We affirm the order insofar as it rests on "finding and conclusion" number 3, dealing with the defense of estoppel.

### Items 3 and 4: Backrip Saw and Blower

■ Items 3 and 4 are for violations of OAR 437-10-8-29. That rule requires that "vertical and inclined belts shall be enclosed by standard guards." Petitioner correctly points out that the rules do not require guards on v-belts that are 13/32 inches wide or narrower and operating at a speed of 250 feet per minute or less. OAR 437-10-8-1. Petitioner contends that there is a complete failure of proof with regard to items 3 and 4, because there is no evidence that the v-belts on the backrip saw and blower were wide enough and fast enough to require guarding.

Although the record does not contain evidence of the exact size and speed of the belts, it does contain evidence to support an inference that the belts were subject

---

[3] There is *evidence* about economic feasibility in the record of the hearing on the merits of this citation, but the order under review does not purport to base its conclusion on that evidence.

to regulation. Photographs of both v-belts appear in the record as exhibits. Testimony establishes that each belt is a certain distance above the floor. By comparing the width of each belt with its distance from the floor, it is possible to get a rough idea of the size of the belts, and a trier of fact could find each to be well in excess of 13/32 inches wide. APD's inspector testified that the motors driving both belts were "quite * * * large" and that injuries resulting from contact with the belts would be severe because of the speed of the belts. From this, the referee could reasonably conclude that the belts were travelling at a speed rapid enough to require regulation. We therefore affirm the referee's approval of items 3 and 4.[4].

Petitioner also contests Citation 2, which assesses a sizable penalty because petitioner did not correct the item 2 violation in Citation 1 within the time allowed for correction. The validity of Citation 2 therefore depends on the validity of item 2.[5] Because this matter is remanded to the Board for further findings regarding item 2, the validity of that item has not yet been finally determined. If petitioner prevails on remand, APD will withdraw Citation 2, and it will no longer be an issue. We need not determine the validity of Citation 2 unless a new final order from the agency makes it necessary to do so. *See* ORS 183.480(3).

■ Finally, petitioner contends that the penalties in both citations were inappropriate. The assessments were authorized by ORS 654.086, and the amounts were within the statutory limits. We therefore have no power to redetermine the penalties. *Acc. Prev. Div. v. Van Eyk,* 31 Or App 1355, 572 P2d 671 (1977); *Mary's Fine Food, Inc. v. OLCC,* 30 Or App 435, 567 P2d 146 (1977).

The order of the Board is remanded for further findings under Citation 1 concerning the issues of lack of employer knowledge, increased danger and economic feasibility.

---

[4] *See* n 2, *supra.*

[5] Exhibit "A" to Citation 2 states: "A request for hearing is presently pending on Citation [1] * * *. In the event the employer prevails on item No. 2 of Citation [1] * * *, this Citation will be withdrawn."