# Richmond

## Leo Bacigalupo, Et Al. v. Thurman Fleming.

March 10, 1958.

Record No. 4769.

Present, All the Justices.

The opinion states the case.

*Wilbur M. Kessler* (*Cutchins, Wallinger, Wallace & Kessler,* on brief), for the plaintiffs in error.

*Esther S. Weinberg* and *Thomas A. Williams* (*Williams, Williams, Williams & Williams,* on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Thurman Fleming, sometimes hereinafter referred to as the plaintiff, filed a motion for judgment against Leo Bacigalupo and Edythe H. Bacigalupo, husband and wife, to recover the sum of $3,593, alleged to be due plaintiff "by reason of a certain contract * * *, whereby defendants employed plaintiff as supervisor to manage the construction of a certain house in Henrico County, Virginia." A copy of the contract was filed with the motion.

Defendants filed grounds of defense asserting that all sums due plaintiff had been paid. Subsequent to a mistrial, they filed amended and supplemental grounds of defense and a cross-claim. They averred that plaintiff was a general contractor as defined in Code, § 54-113 (2), and that he had failed to obtain a license and register in accordance with the requirements of Chapter 7, Title 54 of Code, 1950, and, therefore, was not entitled to recover any amount from the defendants. They also denied that plaintiff had properly performed his contract, and in their cross-claim asked for damages in the sum of $6,000.

Plaintiff thereupon filed separate replications to defendants' amended grounds of defense and to their cross-claim. He alleged that the additional grounds of defense came too late, denied that he was a general contractor, averred that the defendants were themselves the contractors, and that he was the agent of the defendants. He further averred that he had faithfully performed his contract, and that the house had been completed according to the plans and specifications.

At the conclusion of all the evidence, defendants moved the court to strike the evidence upon the grounds stated in their grounds of defense and because plaintiff had failed to properly account for the money paid to him by defendants. The court overruled the motion. After being instructed by the court, the jury returned a verdict for the plaintiff in the sum of $3,400, and against the defendants on their cross-claim. A motion to set aside the verdict on the ground that it was contrary to the law and the evidence, and for misdirection of the jury was overruled. Judgment was entered accordingly, defendants duly objected, and subsequently we granted this writ of error.

The controlling question for our determination is: What effect did the failure of the plaintiff, Thurman Fleming, to register as a contractor and obtain the license required by the provisions of Chapter 7, Title 54, Code of Virginia, 1950, (sections 54-113 to 54-145, inclusive[1]), have upon his right to maintain the action?

The pertinent and material evidence on that question is as follows:

In March, 1953, the defendants consulted Fleming with reference to constructing an addition to their home. Fleming had previously followed the occupation of real estate broker; but was, at that time, engaged in the construction of a building. He said that he had learned something about the construction of buildings through his real estate experience and by taking and graduating from a course in architecture. It appeared that he had, during the past ten years, been engaged in constructing ten or more buildings. Leo Bacigalupo was engaged in the grocery business and neither he nor his wife had any experience in the building of houses.

The conference between the parties led to negotiations for the construction of a home for defendants in Henrico County, Virginia. Fleming prepared the plans and specifications for the house, and they were approved by defendants, with the proviso that the cost of the building should not exceed $28,000 or $29,000. Fleming then obtained estimates or bids for labor and material from three or four persons or firms for each portion of the house, and recommended the acceptance of the low bids. Defendants accepted the recommendation, except in three instances, where they directed that contracts be made with their personal friends. Fleming then prepared a written contract, which was executed by both parties. It reads as follows:

"This agreement made this 11th day of March 1953, by and be-

[1] The amendments to certain of these sections by Acts, 1954, Chapter 415, page 514, and Chapter 428, page 523, do not affect this proceeding.

tween Mr. and Mrs. Leo Bacigalupo, hereinafter called owner and Thurman Fleming, hereinafter called Supervisor.

"The said supervisor agrees to supervise the management and construction of home on Lloyd Avenue, Thompson Heights Henrico County Virginia, according to plans and specifications for the sum of 10% of the gross cost of construction, payments to be made in part during construction, said payments will be used to pay cost of construction during construction.

"The said owner agrees and accepts this agreement with the said supervisor and further agrees to furnish construction monies to be paid said supervisor as follows:

| | | |
|---|---|---|
| $2,000.00 | When | start of construction and agreement. |
| 3,000.00 | " | First floor sub-floor is on. |
| 4,000.00 | " | All brick or stone work is completed. |
| 5,000.00 | " | Roof sheeting on and felted in. |
| 4,000.00 | " | Plumbing is roughed-in. |
| 5,000.00 | " | Plastering is completed. |

Balance when house is completed.

*Leo Bacigalupo* (SEAL)
*(Mrs.) Edythe H. Bacigalupo* (SEAL)
*Thurman Fleming* (SEAL)"

In the specifications, the first paragraph entitled "General Conditions" [2] refers to the plaintiff as "The general contractor," to the

---

[2] "The general contractor shall visit the premises to ascertain the conditions and lay-out his work and to be responsible for its correctness and shall co-operate with the sub-contractors and due diligence and in proper sequence with other work; he shall verify at the building all measurements relating to his work and shall not execute any work that is not sufficiently shown or understood, as full explanation will be given upon application to the owner. The sub-contractors are to provide all material and labor for their work, they are also to provide all scaffolding and transportation. The owner shall make available water on the lot, but the plumber shall make all necessary connections. All sub-contractors shall obtain all necessary permits for the prosecution of their work and shall be responsible for all damages to premises and persons on premises until final acceptance by the owner. The drawings and specifications shall be carried out in letter and spirit and are intended to co-operate so that anything clearly shown on the drawings and not mentioned in the specifications or viceversa is to be executed the same as if it were both shown and specified. Figured dimensions shall govern over scale measurements. No extra work shall be done without written order from the owner, said order stating amount and manner of compensation."

persons providing material and labor as "sub-contractors," and to the defendants as "the owner."

In the paragraph relating to "Plastering," approval is required from the "general contractor." In the paragraph relating to "Carpentry," it is provided: "The drawings are to be in charge of the Contractor who is to be in charge of all the work during its progress, to explain the drawings and set off accurately for the other workmen the sizes, distances, and levels, for all parts of the building. * * *" In the paragraph relating to "Wiring," it is provided that the fixtures shall be selected by "Owner."

On March 17, Leo Bacigalupo obtained a permit from the office of the Building Inspector of Henrico County. Only it, in the space provided for the name of contractor, appears the word "Owner." Work was then begun upon the excavation for the house, and the work proceeded in accordance with the contract and the specifications.

During the progress of the work, a number of alterations and additions were made to the plans at the direction of defendants. Fleming was present at the location of the building each day, and according to his evidence acted as "Overseer," constantly seeing that the work was being performed according to the plans and specifications. He inspected the materials furnished, instructed the sub-contractors, whose bids had been accepted, in the progress of their work, and employed, discharged and paid all common laborers and carpenters.

Leo Bacigalupo rarely visited the construction premises during working hours, although his wife was a frequent visitor there. Neither of them undertook to instruct the contractors or workmen while they were performing their duties.

During the construction, plaintiff rendered periodic statements to the defendants, and the defendants paid him, as specified in the contract, from time to time, the total sum of $33,125.33, which included compensation for alterations and additions.

Fleming testified that he did not obtain a license or register as a general contractor, because he considered himself to be merely an agent of the defendants and at all times subject to their direction, if they chose to give him any directions. He admitted that he kept the job going and was present at all times as "Overseer" to see that each subcontractor and laborer did his job properly.

There was considerable contradictory evidence with respect to whether the house was completed in a workmanlike manner and ac-

cording to the plans and specifications, and whether the defendants were entitled to any damages or refund from the plaintiff. We will not set out that evidence, in view of the conclusion we have reached, and the fact that defendants have assigned no error to the action of the jury in resolving the cross-claim against them; nor will it be necessary to consider the assignments of error relating to the granting and refusal of instructions.

Upon the substantial completion of the house, plaintiff rendered defendants a bill for $3,428, representing 10% of the sum of $34,280, the total cost of the house. Differences having arisen between the parties with respect to the character of the work done, defendants refused to make full payment of the fee demanded and, thereupon, plaintiff instituted this proceeding.

Chapter 7 of Title 54, Code, 1950, designed to protect the public from inexperienced, unscrupulous, irresponsible, and incompetent contractors, is a valid exercise of the police power of the State, and a contract made in violation of its provisions is void and there can be no recovery thereon. Enforcement of the contract is denied the unregistered contractor, not because of the nature of the transaction, but as a penalty for failing to comply with the registration statutes. *Massie* v. *Dudley*, 173 Va. 42, 3 S. E. 2d 176; *Hancock Co.* v. *Stephens*, 177 Va. 349, 14 S. E. 2d 332; *State Realty Co.* v. *Wood*, 190 Va. 321, 57 S. E. 2d 102; *Bowen Electric Co.* v. *Foley*, 194 Va. 92, 72 S. E. 2d 388; *Rohanna* v. *Vazzana*, 196 Va. 549, 84 S. E. 2d 440.

So much of Chapter 7 of Title 54 as is pertinent and material here reads as follows:

§ 54-113 (2) " '*General contractor*' or '*subcontractor*' shall mean any person, firm, association or corporation that for a fixed price, commission, fee or percentage, undertakes to bid upon, or to construct or superintend the construction of, any building, highway * * *, when the cost of the undertaking or a subcontract thereunder is twenty thousand dollars or more; and any person, * * * who shall bid upon or engage in constructing or superintending the construction of any structure or any undertaking or improvements or part thereof above mentioned in the State, costing twenty thousand dollars or more, shall be deemed to have engaged in the business of general contracting or subcontracting in this State."

§ 54-128 provides: "It shall be unlawful for any person to engage in, or offer to engage in, general contracting or sub contracting in this

State, unless he has been duly licensed and issued a certificate of registration under the provisions of this chapter."

§54-129 provides for application for registration, fees, examination and issuance of certificates.

§ 54-142 makes a violation of the statute punishable as a misdemeanor.

The classification "any person" is comprehensive, broad, unlimited, unrestricted, and indiscriminative of whatever kind. It includes a person, whether he be an architect, an engineer, an agent, a servant, a superintendent, a supervisor, or a contractor, independent or dependent, who undertakes to do the things specified by the statute. It makes no difference what a person calls himself. If he does what is specified by the statute, then the statute fixes his classification.

■ The language of the contract of March 11 is clear and unambiguous. Fleming therein agreed to supervise the management and construction of a home for the defendants. The words "supervise," "superintend," and "oversee" in ordinary use and common acceptation have substantially the same meaning. Each means "To have or exercise the charge and oversight of; to oversee with the power of direction." Webster's New International Dictionary, Second Edition, Unabridged. The actions of the parties showed that each of them placed such a meaning on the word "superintend."

The record as a whole, the allegations in the motion for judgment, the provisions of the written contract, the specifications, and the evidence, clearly and conclusively show that Fleming for a "fee or percentage" undertook to "superintend the construction of" a building, and that he was engaged "in constructing or superintending the construction of" a structure, or part thereof, costing more than $20,-000. This brought his activity squarely within the definition of a general contractor as set out in Code, § 54-113 (2). He had not obtained a license or registered as such contractor, and was, therefore, not entitled to recover against the defendants. (Code, § § 54-128 and 54-142). The trial court erred in refusing to sustain the motion of the defendants to strike the evidence.

■ Plaintiff moved to dismiss this writ of error on the ground that the "Trial Court (sic) had no power to extend the sixty-day period in which the transcript must be tendered under Rule 5:1 § 3 (f), and it should have refused to sign the transcript in view of its opinion that counsel for plaintiff had not had 'reasonable time' to examine the transcript and appear before the Court (sic)." He relies

upon *Ocean Accident & Guaranty Corp.* v. *Haley*, (1932) 158 Va. 691, 164 S. E. 538; *Town of Falls Church* v. *Myers*, (1948) 187 Va. 110, 46 S. E. 2d 31; and *Steingold* v. *Seaton*, (1948) 187 Va. 923, 48 S. E. 2d 225, which were decided prior to the adoption of our present Rules, effective as of February 1, 1950.

Final judgment in this case was entered January 21, 1957, and the sixty-day period thereafter expired on March 22, 1957.

It appeared that counsel for the defendants personally delivered on March 19, 1957, a transcript of the evidence to the law office of Esther S. Weinberg, senior counsel for plaintiff, and notified Miss Weinberg of that fact by calling her on the telephone while she was engaged at the State Law Library. On March 20, 1957, Miss Weinberg returned the transcript to counsel for defendants, together with a letter stating that she and associate counsel refused to accept the transcript, because they had not been given reasonable notice of the time and place of tendering to the judge, nor a reasonable opportunity to examine it. Thereupon, on the same day, March 20, 1957, defendants' counsel gave written notice to counsel for the plaintiff that the transcript would be presented to the judge at 9:30 a.m., March 22, 1957. On the named day it was presented to the judge. The judge, on that day, advised counsel for both parties by letter that he was of opinion that two days was "not sufficient time to allow plaintiff's counsel to examine the transcript of 375 pages;" but that he was of the further opinion that if they were allowed to make their objections thereto at 9:15 o'clock a.m., March 29, 1957, they would have had sufficient time to consider the record and "the opportunity to state their objections thereto," and, if inaccuracies were pointed out they would be corrected, but that in the absence of such allegations the record would be certified. The judge, on March 25, 1957, again wrote counsel for the parties that he had examined the authorities cited to him, and was still of the opinion that seven days afforded plaintiff's counsel "reasonable opportunity" to examine the copy of the transcript delivered to them on March 22, 1957, and that their objections, if any, would be heard on March 29, 1957. After hearing the parties on March 29, 1957, within seventy days after final judgment, the judge signed the transcript of the evidence.

It will be observed that under Rule 5:1 § 3 (e) a transcript or statement signed at the end by counsel for all parties must be "tendered to the judge within sixty days and signed by the judge within seventy days after final judgment."

"Such a transcript or statement not signed by counsel for all parties becomes part of the record when delivered to the clerk, if it is *tendered* to the judge *within sixty days* and *signed* at the end by him *within seventy days* after final judgment. * * * Counsel tendering the transcript or statement shall give opposing counsel *reasonable written notice of the time and place of tendering it and a reasonable opportunity to examine the original* or a true copy of it. The signature of the judge, without more, will be deemed to be his *certification* that counsel had the *required notice* and *opportunity*, and that the transcript or statement is authentic. He shall note on it the date it was tendered to him and the date it was signed by him." (Emphasis added.)

The cases relied on by plaintiff are distinguishable. They arose under statutes and rules which are no longer in effect.

The provisions of § 6252,[3] Code 1919, and original Rule XXIV, later amended as Rule XXI, have been superseded by present Rule 5:1 § 3 (f).

Former Rule XXI specifically provided that, "Reasonable notice in writing shall be given to the opposite party or his attorney of the time and place at which said certificate is to be tendered." Under Rule 5:1 § 3 (f), the requirement of "reasonable notice" of tendering is modified and qualified by the provision affording opposing counsel "a reasonable opportunity to examine the original or a true copy of it."

The requirement that opposing counsel have a reasonable opportunity to examine the transcript sets out the purpose of reasonable notice. If, after receipt of notice, opposing counsel be afforded reasonable opportunity to examine the transcript, and to make objections thereto, if any he has, before it is signed by the trial judge, the object of reasonable notice will have been attained.

The tender of the transcript within sixty days is mandatory, (*Steingold* v. *Seaton, supra*) and that requirement was complied with here. What is reasonable time with regard to giving opposing counsel written notice depends upon the circumstances, and is usually determined by the trial judge. (*Town of Falls Church* v. *Myers, supra*). Here plaintiff's counsel was given "a reasonable opportunity" to examine the transcript, in the extension of the time from March 22 to March 29, and to make objection thereto, if any. The judge

---

[3] This section, subsequently § 8-330, Code of 1950, was repealed in 1954, Acts 1954, Chapter 593.

signed the transcript within the seventy-day period allowed. We find no merit in the motion to dismiss.

Cf. *Hyson* v. *Dodge*, 198 Va. 792, 96 S. E. 2d 792.

For the reasons stated, the motion to dismiss the appeal is overruled; the judgment of the trial court in favor of the plaintiff for $3,400 is reversed; the verdict of the jury awarding that sum is set aside; the verdict of the jury against defendants on their cross-claim affirmed; and final judgment entered here accordingly.

*Reversed in part; affirmed in part; and final judgment.*