John W. KARR, et al., Appellants,

v.

C. DUDLEY BROWN & ASSOCIATES, INC., Appellee.

No. 87–1358.

District of Columbia Court of Appeals.

Argued Oct. 18, 1989.
Decided Dec. 21, 1989.

William G. McLain, with whom Ann B. Richardson was on the brief, for appellants.

John F. Dienelt, with whom Richard B. Richman was on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This appeal originated in an action for breach of contract brought by appellee, C. Dudley Brown and Associates ("Brown"), against appellants, John M. Karr and Mona Lyons ("the Karrs"). The primary challenges in this court arise from adverse rulings by the trial judge regarding the Karrs' counterclaims for negligence and violation of the District of Columbia Home Improvement Regulations, 16 DCMR § 800.1 *et seq.* (1987) ("Regulations"), and their amended answer which included a claim of set-off.[1] After a non-jury trial, the trial court rendered a judgment for Brown. The Karrs challenge this decision, asserting that, contrary to the trial court's rulings: (1) Brown could not recover under its contract with the Karrs because the contract was void under the Home Improvement Regulations; (2) Brown was re-sponsible for the negligent construction of fireplaces in the Karrs' home; and (3) the statute of limitations did not bar the set-off claim in the Karrs' amended answer. We affirm in part and remand in part.

In the fall of 1978, the Karrs engaged Gary Baxter as the principal contractor for the restoration and renovation of their victorian home. Because Baxter had no particular experience with old homes, he recommended that the Karrs seek the help of C. Dudley Brown, president of appellee corporation. The Karrs asked Brown to be the general contractor on the job, but he refused, agreeing instead to act as a consultant. The parties then agreed that the Karrs would hire Brown at $50 per hour for his consulting services. Neither this agreement nor the agreement between the Karrs and Baxter was reduced to writing.

The renovation of the Karrs' home was a major undertaking which involved the repair of serious structural problems, including settling, listing, and termite damage. Brown played an active role in this process; in addition to providing furnishings, he advised the Karrs about the overall plan for the project. On several occasions Brown advised Baxter and supervised his work, and Baxter usually deferred to Brown's greater expertise. Brown also performed some work on the property himself, including the trussing of the attic.

As part of the restoration process, Brown suggested that the Karrs install fireplaces in two rooms of their home. He determined the location of the fireplaces, decided what they should look like, and recommended that the Karrs engage Woody Orner, a master mason, to construct them. Brown also provided the ornamental hardware for the fireplaces. The Karrs later asserted that the fireplaces were negligently constructed, and they thus became

---

**1.** The Karrs' answer also alleged that the contract required Brown to supervise the renovation as well as provide consulting services. They further alleged that they had not contracted with appellee corporation but with C. Dudley Brown individually. The trial court, however, found that appellants "knew or should have known ... that Brown was, and was acting as, a corporation." Throughout this opinion, unless otherwise specified, references to "Brown" will include both C. Dudley Brown, the individual, and appellee-corporation.

In addition to their negligence and Home Improvement Regulations counterclaims, the Karrs counterclaimed for breach of contract and fraud. The court dismissed their fraud claim for failure of proof at trial, and rejected their breach of contract counterclaim in its Memorandum Opinion and Judgment.

the subject of their negligence counter-claim against Brown.

As the restoration progressed, the Karrs became increasingly disenchanted with what they claim was undue delay in the work's progress. As a result of the delays, the Karrs withheld further payments to Brown until the work was completed. In particular, they refused to compensate Brown for some furnishings he had provided for them. Brown then brought this action to recover payment for the furnishings.

At trial, which commenced on May 28, 1985, the court elected to bifurcate the Karrs' set-off claim from the rest of the case and dismissed their fraud claim for failure of proof. At the conclusion of the non-jury trial, the court made extensive findings of fact. It found that, despite Brown's active participation, it was Baxter, not Brown, who assumed direct responsibility for completion of the renovation. Thus the court concluded that Brown was not a "general contractor" within the meaning of the Home Improvement Regulations. The court also found that Brown was not responsible for the negligent construction of the Karrs' fireplaces, and held that the Karrs' set-off claim was barred by the statute of limitations. This appeal followed.

## I.

 On appeal, the Karrs first contend that their contract with Brown is void under the Home Improvement Regulations. It is undisputed that Brown was neither licensed nor bonded in compliance with the Home Improvement Business Act, D.C. Code § 2–501 et seq. (1988 Repl.) ("Act"), and the accompanying Home Improvement Regulations. Moreover, the contract between the parties did not meet the standards set by the Regulations. The sole question for our consideration, then, is whether, within the meaning of the Regulations, Brown acted as a "home improvement contractor" for the renovation of the Karrs' home.

The scope of our review of this matter is governed by § 17–305(a) of the D.C.Code, which provides that when a case is tried without a jury, "the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." D.C. Code § 17–305(a) (1989 Repl.). Because we conclude that the trial court made no error of law and there is sufficient evidence to support its findings of fact, we uphold its conclusion that Brown was not subject to the Home Improvement Regulations.

The Home Improvement Regulations prohibit any person from requiring or accepting any payment under a home improvement contract in advance of full completion of all the work required to be performed under the contract "unless that person is licensed as a home improvement contractor." 16 DCMR § 800.1 (1987). When an unlicensed contractor violates these regulations by accepting prepayment under a "home improvement contract," that contract is void and unenforceable, even on a quasi-contractual basis. *Truitt v. Miller*, 407 A.2d 1073, 1079 (D.C.1979).

The Regulations define a "home improvement contract" as "an agreement for *the performance of* home improvement work for a contract price of three hundred dollars ($300) or more," 16 DCMR § 899.1 (1987) (emphasis added), and further define "home improvement work" as:

> the construction of one or more additions to, other improvement, repair, restoration, alteration, conversion, or replacement of any residential property.

16 DCMR § 899.1 (1987). The trial court concluded that, because Brown did not assume ultimate responsibility for completion of any part of the renovation, the services he performed for the Karrs did not constitute "home improvement work" within the meaning of this definition.

The evidence supports the trial court's finding that Brown did not promise the Karrs that he would ensure the project's satisfactory completion, but explicitly cast himself in the role of advisor. He refused appellant's initial invitation to be general contractor, and he did not assume that capacity as the work progressed.

Although Brown did perform some work on the renovation himself, there is no evidence that he was explicitly required to do so pursuant to the contract. Brown and Baxter had a longstanding personal and perhaps professional relationship,[2] and therefore Brown probably took a more active role in the project than was his practice. He did not, however, have any direct authority over the work of Baxter, who took on the general contractor's role. Baxter, not Brown, collected bids from the subcontractors and submitted them to the Karrs, and Baxter hired his own assistants. The parties' agreement gave Brown no direct or indirect responsibility for those who actually performed work on the property. Moreover, because none of the items that Brown provided are "part of the realty," they are not the type of improvements covered by the Regulations.

The facts of the case principally relied on by the Karrs, *Truitt v. Miller, supra,* 407 A.2d at 1073, are distinguishable from the present case. In *Truitt,* we held that a workman was a "home improvement contractor" and thus subject to the Regulations. *Id.* Dismissing the argument that he was merely a conduit for payments to subcontractors, the opinion noted that the contractor was actually responsible for completing the project, and that, indeed, "[n]othing in the proposed contracts and agreements would mandate that the contractor obtain outside workmen." *Id.* at 1079. We also observed that the contractor was not paid for his services on a salaried basis, but was to be compensated according to a "cost-plus" method of payment whereby he would be compensated for the cost of the work done plus a percentage of that cost. *Id.* at 1076, 1078–79. Here, by contrast, Brown's contract with the Karrs was a limited one; the parties agreed that he was to be paid an hourly fee for consultations as well as compensation for furnishings he provided during the course of the renovation.

■ It is true, as the Karrs argue, that because the Home Improvement Business Act is remedial in nature, this court has interpreted it and its accompanying regulations broadly. *Bathroom Design Inst. v. Parker,* 317 A.2d 526, 529 (D.C.1974). The remedial nature of the statutory scheme does not, however, grant this court license to endow these Regulations with a meaning which their drafters never anticipated.

A review of cases from other jurisdictions illustrates the comparatively narrow scope of our Home Improvement Regulations. In *Remodeling Consultants, Inc. v. Builders Board,* 19 Or.App. 794, 528 P.2d 1373 (1974), for example, the Oregon Court of Appeals held that a self-styled "consultant" was subject to the state's licensing law. The statute construed in that case differed from the Home Improvement Regulations, however, because it governed any person who agreed "to perform any work *in connection with* the construction, alteration, repair, improvement ... of a structure." *Id.* 528 P.2d at 1375, *citing* ORS 701.005(2). Similarly, in *Bacigalupo v. Fleming,* 199 Va. 827, 102 S.E.2d 321 (1958), the Supreme Court of Appeals of Virginia held that an "overseer" of a construction job was subject to a statute governing "general contractors," where the statute's definition of "general contractor" included "*superintending* the construction of" any structure. *Id.* at 102 S.E.2d 324, *citing* Va.Code Ann. § 54–113(2) (1950).[3] The Home Improvement Regulations, by contrast, govern only agreements "for *the performance of* home improvement work." 16 DCMR § 899.1 (1987) (emphasis added). This narrower language is limited to agreements which provide for the actual "delivery" of a finished project. Because the contract between Brown and the Karrs does not fit this definition of a home im-

---

**2.** The trial court found that Brown was Baxter's "mentor."

**3.** The two cases cited by appellants are also distinguishable from this case because the "contractors" in those cases played more active roles in the projects. In *Remodeling Consultants, supra,* for example, the "consultant" accepted responsibility for the completion of the project in return for a fixed fee. 528 P.2d at 1375–76. Similarly, the "overseer" in *Bacigalupo, supra,* also working for a fixed fee, agreed to supervise the entire construction of the defendant's home. 102 S.E.2d at 323.

provement contract, we uphold the trial court's conclusion that Brown is not subject to the Regulations.

## II

 The Karrs also challenge the trial court's finding that Brown was not responsible for the negligent design of the fireplaces installed in their home during the renovation. As in our consideration of the Home Improvement Regulations, the scope of our review of this matter is governed by D.C.Code § 17–305 (1989 Repl.). Thus we will not disturb the trial court's factual findings unless they are clearly erroneous. *Auxier v. Kraisel,* 466 A.2d 416, 418 (D.C. 1983).

The record amply supports the trial court's conclusion that Brown was not responsible for the negligent construction of the fireplaces.[4] As the trial court noted, the Karrs presented no evidence that Brown directed or supervised the mason's work. Their claim that Brown's testimony regarding his involvement with the fireplaces was "internally inconsistent" is without support in the record.

Further, the Karrs' claim that "Brown's denials were contradicted by every other witness on the point" is misleading. Aside from their own testimony, the Karrs cite only the testimony of Baxter, which is too vague to constitute a clear explanation of Brown's role. Baxter testified that Brown "instructed Woodie's [sic] [the master mason] as to how they [the fireplaces] were to be done." This statement could describe many different levels of participation in the work on the fireplace, and Brown's testimony is consistent with the characterization. Brown testified that he merely told the mason where the fireplaces were to go and what type of grate would be installed so that the mason could build the masonry around it. The trial court credited Brown's testimony rather than that of the Karrs,

who claimed that Brown actually supervised the mason's work. Because the trial court's findings are well supported by the evidence, we similarly do not disturb them.

## III

The Karrs' final contention is that the trial court erred when it ruled that the statute of limitations barred the set-off "claim"[5] included in the Karrs' amended answer. The Karrs argue that (1) the law of the case doctrine precluded the trial judge from considering the statute of limitations issue, and that (2) even if the trial judge was free to consider the statute of limitations issue, she misapplied the law to the facts of this case. While we uphold the trial judge's conclusion that the law of the case doctrine did not preclude her determination of the statute of limitations issue, we remand this case for further consideration of the applicability of the statute of limitations to this case.

 First, the Karrs contend that the trial judge was precluded from considering the statute of limitations issue because it had been decided in an earlier proceeding. When, in making a final ruling regarding a case, a judge decides an issue of law, that decision becomes the "law of the case" and a later court of coordinate jurisdiction will not, with some exceptions, reconsider the question. *Gordon v. Raven Sys. & Research, Inc.,* 462 A.2d 10, 12 (D.C.1983). Rather than acting as an absolute bar to later consideration, however, the law of the case doctrine describes a general practice of courts that dispenses with the need to consider what has already been decided. *Smith v. United States,* 406 A.2d 1262, 1263 (D.C.1979). *But see United States v. Davis,* 330 A.2d 751, 755 (D.C.1975). In order to become the law of the case, an issue must have been considered and decided by the first court, *Weinberg v. Johnson,*

---

4. It is undisputed that the fireplaces were negligently constructed.

5. The Karrs' amendment to their answer begins as follows: "[d]efendants claim as an offset to any monies they allegedly owe to plaintiff...." Despite this characterization, the Karrs now

contend that their set-off "claim" was actually a defense of payment. For purposes of this opinion, we adopt the designation "set-off claim" to characterize the substance of the Karrs' amended answer. We leave the initial determination of its true character to the trial court.

518 A.2d 985, 987 (D.C.1986), either expressly or by necessary implication. *Bouchet v. National Urban League, Inc.*, 235 U.S.App.D.C. 37, 44, 730 F.2d 799, 806 (1984).

The Karrs argue that the judge who granted their motion for leave to file an amended answer fully considered the statute of limitations issue, and by granting the motion he ruled that the statute of limitations did not bar the set-off claim contained therein. To support this argument, they note that in Brown's opposition to their motion to file the amended answer, he argued that the Karrs' set-off claim was barred by the statute of limitations. Because the Karrs thereafter responded to this argument in a reply brief, they contend that the issue was then "squarely framed" for the motions judge. Thus, although the motions judge did not expressly rule on the statute of limitations issue, the Karrs argue that by granting their motion, he dismissed the statute of limitations defense "by necessary implication."

■ The Karrs' argument misconstrues the purpose of the amendment process. In order to grant a litigant's motion for leave to amend a pleading, a judge need not consider the substantive merits of the amendment. Superior Court Civil Rule 15, which governs amendments to pleadings, provides that leave to amend pleadings "shall be freely given when justice so requires." Super.Ct.Civ.R. 15(a). When ruling on a motion for leave to amend, trial courts have considered the length of the pendency of the proceedings, the existence of bad faith, the possibility of prejudice to the opposing party, and the orderly administration of justice. *Gordon, supra,* 462 A.2d at 13. Substantive issues like the affirmative defense of statute of limitations, however are normally reserved for proceedings on the merits of the amended pleading. *See* Super.Civ.R. 8(c). Thus, as the trial judge concluded in her Supplemental Memorandum Opinion, the motions judge did not purport to consider the merits of Brown's statute of limitations argument. The law of the case doctrine, therefore, did not preclude the trial judge from considering the issue.

■ The Karrs also contend that, even if the trial judge was free to consider Brown's statute of limitations defense, her ruling on the merits of the defense is flawed. They argue that the trial judge incorrectly held that because their claim was unrelated to the basis of Brown's original claim, it was subject to, and barred by, the statute of limitations.

It is undisputed that if, at the time of their amended answer, the Karrs brought a separate claim against Brown for payment of money owed them in return for legal services, that claim would be barred by the statute of limitations. They argue, however, that their set-off claim constitutes a defense to the original action, and thus is not subject to the statute of limitations. In the alternative, they contend that if their amendment is treated as a counterclaim, it is still not barred by the statute of limitations because it is "intrinsic" to the subject matter of the original action and thus is a "recoupment" which is deemed to be filed on the date of the original pleading. Specifically, the Karrs claim that they are prepared to prove that the alleged debt owed them by Brown arose under the same contract which is the subject of this suit. Thus they argue that they are entitled to a reduction in any damages awarded Brown in this case.

In its opinion, the trial court addressed the statute of limitations issue by concluding that the Karrs' set-off claim was unrelated to Brown's original claim, and that it was therefore time barred as an independent action. However, the court made no substantial findings of fact on the question and we therefore are unable to review it.[6]

---

6. In a footnote to its Memorandum Opinion the trial court stated that:

Plaintiff also asserts that the fees sought by defendants were the subject of an agreement between the parties in late 1979, pursuant to which plaintiff would forego further payments for its consulting services and defendants would consider their bill for legal services paid in full.

In view of the Court's ruling on the applicability of the statute of limitations, it does not reach the merits of that dispute.

We remand only this latter question for further consideration. The Karrs' factual contentions must be considered in determining whether the statute of limitations bars their amended answer, *Sears, Roebuck & Co. v. Goudie*, 290 A.2d 826 (D.C.), *cert. denied*, 409 U.S. 1049, 93 S.Ct. 523, 34 L.Ed.2d 501 (1972), or whether, as they claim, their answer was an affirmative defense of payment and the statute of limitations need not be considered at all. *See* Super.Ct.Civ.R. 8(c). Thus, the trial court may choose to conduct a brief hearing on the issue or may marshal the known facts already of record. It should thereafter make specific findings of fact and conclusions of law.

*So Ordered.*

The court did not expand on this reasoning in its Supplementary Opinion and Order.