COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Chafin and Decker
Argued at Richmond, Virginia

**UNPUBLISHED**

DEPARTMENT OF PROFESSIONAL
  AND OCCUPATIONAL REGULATION,
  BOARD FOR CONTRACTORS

                                                  MEMORANDUM OPINION[*] BY
v.      Record No. 1483-13-2                      JUDGE GLEN A. HUFF
                                                  FEBRUARY 4, 2014

BEST BUY STORES, LP


                FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                              Lon E. Farris, Judge

        Elizabeth B. Myers, Assistant Attorney General (Kenneth T.
        Cuccinelli, II, Attorney General; Joshua N. Lief, Senior Assistant
        Attorney General; Steven P. Jack, Assistant Attorney General, on
        briefs), for appellant.

        Martin Schubert (John D. McGavin; Bancroft, McGavin, Horvath &
        Judkins, P.C., on brief), for appellee.


        The Department of Professional and Occupational Regulation, Board for Contractors

("Board") appeals a ruling of the Circuit Court of Prince William County ("circuit court")

reversing the June 5, 2012 decision by the Board finding Best Buy Stores, LP ("Best Buy") in

violation of 18 VAC 50-22-260(B)(8) and -260(B)(27). The circuit court reversed the Board

explaining that the Board reached an arbitrary and capricious decision. The circuit court further

ruled that "as a matter of law" Best Buy is not required to obtain "a contractor's license with a

gas fitting specialty."

        On appeal, the Board contends that the circuit court erred 1) in not finding waiver of Best

Buy's argument that the installation of a replacement gas dryer was not the act of contracting

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

which requires a contractor's license with the appropriate gas fitting specialty classification, 2) by using the incorrect standard of review in interpreting the Board's decision that Best Buy was acting in this matter as a general contractor, and 3) in its interpretation of §§ 54.1-1100 and 54.1-1102(A) of the Code of Virginia and related regulations of the Board when reviewing the Board's decision that Best Buy was acting in this matter as a general contractor. For the following reasons, this Court affirms the decision of the circuit court.

## I. BACKGROUND

On appeal, "[w]e view the facts in this case 'in the light most favorable to sustaining the [Board's] action and take due account of the presumption of official regularity, the experience and specialized competence of the [Board], and the purposes of the basic law under which the [Board] has acted.'" Nat'l College of Bus. & Tech., Inc. v. Davenport, 57 Va. App. 677, 680-81, 705 S.E.2d 519, 521 (2011) (quoting Sentara Norfolk Gen. Hosp. v. State Health Comm'r, 30 Va. App. 267, 279, 516 S.E.2d 690, 696 (1999)). So viewed, the evidence is as follows.

Best Buy is a retail sales business specializing in consumer electronics, major appliances, home office products, entertainment software, and photography equipment. This case began with a customer's purchase of a gas dryer. In keeping with Best Buy's policy, a sales contract was signed by both the customer and Best Buy's sales representative before the purchase was consummated.

Best Buy maintains a standing Appliance Installation Master Services Agreement ("agreement") with Optima Services Solution, LLC ("contractor") to perform or arrange the installation of all gas appliances sold by Best Buy in Virginia. Contractor "is an independent contractor in the business of providing and engaging Subcontractors to provide delivery, installation, re-installation, call center services and related installation and delivery services as may be required to satisfy the needs of [contractor's] clients." The agreement between Best Buy

and contractor designates contractor as the "General Contractor." Additionally, "[n]o Best Buy employee ever installs gas appliances in Virginia" and Best Buy's agreement with contractor requires that contractor "be licensed under all applicable laws, rules, and regulations."

On March 8, 2011, Stephen Bender ("Bender") purchased a gas dryer from Best Buy in Gainesville, Virginia. In addition to paying for the gas dryer, Bender paid for the installation of the dryer at his home and paid for required accessories including a dryer vent kit and a gas line cable, which were necessary to comply with the building code. Pursuant to the agreement, contractor arranged for Washington Home Services ("subcontractor") to perform the installation, although subcontractor was unlicensed in Virginia. Upon learning that the required gas permit was not obtained by subcontractor, Bender complained to Best Buy's customer service – staffed by contractor – who arranged to have a properly licensed subcontractor inspect the installation.

On March 15, 2011, Bender filed a complaint with the Board. On September 20, 2011, a report of findings was submitted to the Board, alleging Best Buy violated 18 VAC 50-22-260(B)(8) (failing to use a legible written contract that was signed before commencement of work) and -260(B)(27) (practicing in the specialty area of gas fitting without a gas contractor license). In response, the Board conducted an informal fact-finding conference ("IFFC") on February 17, 2012.

At the IFFC, Best Buy presented evidence regarding its installation policy. Best Buy's representatives testified that under Best Buy's business practice, the customer signs the Appliance Installation Terms and Conditions form at the Best Buy store at the time of purchase. That form is "very detailed" and "makes it very clear that a third-party will be performing the installation. At the time of the sale, Best Buy salespersons ask questions about the customer's existing connections and appliances and, if necessary, require the customer to purchase additional accessories to ensure they will be in compliance with applicable building codes after

- 3 -

the installation. Best Buy was unable to produce the Appliance Installation Terms and Conditions form that had been signed by Bender.

The agreement between Best Buy and contractor specifies contractor as the "general contractor" and provides that contractor is responsible for a "warranty of both materials and workmanship, and a guarantee of remediation." Additionally, the agreement states "[contractor] shall be solely responsible for the conduct of all such Subcontractors and any Service Providers actually performing the [installation] Services . . . ." Furthermore, contractor provides "inbound and outbound telephone customer support . . . for the Services provided to Best Buy and its customers . . . ." The agreement requires contractor to send a properly licensed subcontractor to the customer's home to install the appliance and make the connection with the gas line. The subcontractor brings a "control form" with Best Buy's logo to the job site, which the customer and installer initial after the work is completed. Best Buy's "installations are for direct replacement only . . . [s]o if you don't have an existing . . . appliance already in your home, [Best Buy] [won't] offer or sell the service." Moreover, if a job requires more than a connection or additional work is discovered after the sale, contractor's subcontractor has permission to enter into a separate contract with the customer to provide such services.

On March 12, 2012, the presiding officer prepared a summary of the IFFC ("summary") recommending a finding that Best Buy violated both charges. After reviewing the record, the Board voted to adopt the presiding officer's recommendations that Best Buy violated 18 VAC 50-22-260(B)(8) and -260(B)(27), to impose monetary sanctions totaling $850, and to require Best Buy to have a member of responsible management successfully complete a Board-approved remedial education class within 90 days.

Best Buy filed a petition for appeal with the circuit court on August 2, 2012. In support of its appeal, Best Buy asserted that it did not provide a specialty gas fitting service or residential

- 4 -

contracting as it is a retailer and does not construct, remove, repair, or improve residential

buildings.[1]  After hearing briefs and oral argument, the circuit court ruled from the bench that

Best Buy was not required to hold a contractor's license with a gas fitting specialty, and reversed

the decision of the Board.  This appeal followed.

## II.  ANALYSIS

The Board presents three assignments of error on appeal.  First, the Board contends that

Best Buy waived its argument that installing replacement gas dryers was not an act of

contracting because they failed to raise the argument during the proceedings before the Board.

Second, the Board asserts that the circuit court erred by using the incorrect standard of review in

interpreting the Board's decision.  Lastly, the Board contends that the circuit court erred in its

interpretation of Code §§ 54.1-1100 and 54.1-1102(A) and 18 VAC 50-22-260(B)(8) and

-260(B)(27) when reviewing the Board's decision that Best Buy was acting as a general

contractor.

## A.  Standard of Review

Judicial review of an agency decision is authorized by Code § 2.2-4027 of the Virginia

Administrative Process Act ("VAPA").  "Judicial review of an agency decision is limited to

determining '1. [w]hether the agency acted in accordance with law; 2. [w]hether the agency

made a procedural error which was not harmless error; and 3. [w]hether the agency had sufficient

evidential support for its findings of fact.'"  Commonwealth ex rel. Va. State Water Control Bd.

v. Blue Ridge Envtl. Def. League, Inc., 56 Va. App. 469, 480, 694 S.E.2d 290, 296 (2010)

---

[1] Best Buy also asserted the Board rendered an arbitrary and capricious penalty by requiring "a member of Responsible Management [to] successfully complete a Board-approved remedial education class" as this is not proportional to the failure to have a signed contract and the penalty does not specify what class and by whom.

(alterations in original) (quoting <u>Johnston-Willis, Ltd. v. Kenley</u>, 6 Va. App. 231, 241, 369 S.E.2d 1, 6 (1988)), <u>aff'd</u>, 283 Va. 1, 720 S.E.2d 138 (2012).

"On reviewing the claims of error, an agency's factual determination is given substantial judicial deference, and is reviewed 'only for whether they have support in substantial evidence.'" <u>Id.</u> (quoting <u>Mazloumi v. Dep't of Envtl. Quality</u>, 55 Va. App. 204, 208, 684 S.E.2d 852, 854 (2009)). On appeal of an agency's determination of law,

> "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts[, and] . . . judicial interference is permissible only for relief against arbitrary or capricious action that constitutes a clear abuse of delegated discretion."

<u>Evelyn v. Commonwealth</u>, 46 Va. App. 618, 624, 621 S.E.2d 130, 133 (2005) (quoting <u>Kenley</u>, 6 Va. App. at 244, 369 S.E.2d at 8).

"However, courts do not defer to an agency's interpretation '[i]f the issue falls outside the area generally entrusted to the agency, and is one in which the courts have special competence, i.e., the common law or constitutional law . . . .'" <u>Commonwealth ex rel. Va. State Water Control Bd.</u>, 56 Va. App. at 481, 694 S.E.2d at 296 (alteration in original) (quoting <u>Kenley</u>, 6 Va. App. at 243-44, 369 S.E.2d at 8). "An agency's 'legal interpretations of statutes' is accorded no deference because '[w]e have long held that pure statutory interpretation is the prerogative of the judiciary, and thus, Virginia courts do not delegate that task to executive agencies.'" <u>Id.</u> (quoting <u>The Mattaponi Indian Tribe v. Commonwealth Dep't of Envtl. Quality</u>, 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004), <u>aff'd in part</u>, <u>rev'd in part</u> <u>sub nom</u>, <u>Alliance to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality ex. rel. State Water Control Bd.</u>, 270 Va. 423, 621 S.E.2d 78 (2005)).

> "[W]here the issue involves a legal determination or statutory interpretation, this Court does a *de novo* review, especially if the

> statutory language is clear. We are required to construe the law as
> it is written. An erroneous construction by those charged with its
> administration cannot be permitted to override the clear mandates
> of a statute. When an agency's statutory interpretation conflicts
> with the language of the statute or when the interpretation has not
> been consistently and regularly applied, the usual deference to an
> agency's interpretation should be withheld."

Id. at 481-82, 694 S.E.2d at 296-97 (alteration in original) (internal quotation marks omitted) (citations omitted) (quoting Shippers' Choice of Va., Inc. v. Smith, 52 Va. App. 34, 37-38, 660 S.E.2d 695, 696-97 (2008), rev'd on other grounds, 277 Va. 593, 674 S.E.2d 842 (2009)).

### B. Waiver of Best Buy's Argument

The Board claims the circuit court erred in allowing Best Buy to assert the argument that the installation of a replacement gas dryer was not an act of contracting that requires a contractor's license with the appropriate gas fitting specialty classification. Specifically, the Board argues that at no point during the proceedings did Best Buy raise the argument that the installation of the dryer was not contracting because it was a replacement, therefore, the argument was waived pursuant to Rule 5A:18. Best Buy responds that it properly preserved all arguments presented to the circuit court at the proceedings before the Board.

"[A]n appellant, under the provisions of the [VAPA], may not raise issues on appeal from an administrative agency to the circuit court that it did not submit to the agency for the agency's consideration." Pence Holdings, Inc. v. Auto Ctr., Inc., 19 Va. App. 703, 707, 454 S.E.2d 732, 734 (1995). Further, "[n]either the Code nor the Rules of Court mandate a specific procedure to preserve for appeal an issue objected to in the trial court. A simple statement that embodies the objection and reason therefor suffices." Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991).

During the IFFC, Best Buy repeatedly asserted that it operated as a retailer and not a contractor. Early in the IFFC, Best Buy specifically indicated "Best Buy is a retailer. We sell the

product but we're not a contractor." Later, Best Buy urged "that the Board find Best Buy acts solely as a retailer and not as a home improvement contractor as defined pursuant to the specific section listed." Moreover, in Best Buy's written statement submitted to the IFFC it asserts "Best Buy acts solely as a retailer and not as a home improvement contractor as defined pursuant to Va. Code Section 54.1-1100."

By asserting on the record that it was not a contractor under both Code § 54.1-1100 and 18 VAC 50-22-260, Best Buy adequately preserved its argument that it was a retailer and not a contractor under the relevant code sections. "A simple statement that embodies the objection and reason . . ." is adequate to preserve an argument for appeal. Lee, 12 Va. App. at 515, 404 S.E.2d at 738. Therefore, Best Buy's multiple statements on the record are sufficient. The Board's reliance on Pence and Surprenant v. Bd. for Contractors, 30 Va. App. 165, 174, 516 S.E.2d 220, 224 (1999), is misplaced. In Pence, appellant raised issues on appeal contrary to his stance before the Board, 19 Va. App. at 707, 454 S.E.2d at 734, and the appellant in Surprenant never objected to the admission of the evidence during the IFFC and later argued it was improperly considered on appeal. 30 Va. App. at 174-75, 516 S.E.2d at 224. In this matter, Best Buy has asserted it is not a contractor from the beginning of the proceedings. Moreover, in the summary adopted by the Board, the Board found that "Best Buy's installation service is limited to the direct replacement of gas appliances only." Therefore, the circuit court did not err in allowing Best Buy's argument that it was not acting as a contractor because the installation of the gas dryer was a replacement, not an "improvement" or "repair." Accordingly, Best Buy's argument was addressed and preserved before the Board and was not waived.

C. Improper Standard of Review

Second, the Board asserts the circuit court erred by using the incorrect standard of review in interpreting the Board's decision that Best Buy was operating as a general contractor. Specifically, the Board argues that its decision as to whether Best Buy is a "contractor" as defined by Code § 54.1-1100 and 18 VAC 50-22-240 should be given deference.

"With regard to an agency's decision on legal issues, the standard of review to be applied on appeal depends upon the nature of the legal question involved." Volkswagen of Am., Inc. v. Quillian, 39 Va. App. 35, 50, 569 S.E.2d 744, 752 (2002) (citing Kenley, 6 Va. App. at 242, 369 S.E.2d at 7). Questions of statutory interpretation are "subject to *de novo* review by this Court." Wright v. Commonwealth, 275 Va. 77, 81, 655 S.E.2d 7, 9 (2008) (emphasis added). In contrast, "where the question involves an interpretation which is within the specialized competence of the agency and the agency has been entrusted with wide discretion by the General Assembly, the agency's decision is entitled to special weight in the courts." Kenley, 6 Va. App. at 243, 369 S.E.2d at 8. In such a case, "judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of delegated discretion." Id. (quoting Virginia Alcoholic Beverage Control Comm'n v. York St. Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979)).

In the summary, the presiding officer recommended that the Board hold that Best Buy violated 18 VAC 50-22-260(B)(8), (27), by finding that Best Buy acted as a contractor. In making its determination, the presiding officer relied solely on the statutory language defining "contractor" under Code § 54.1-1100. The issue of whether Best Buy is a "contractor" as defined under the Code is key in determining whether Best Buy violated 18 VAC 50-22-260(B)(8) and (27). Additionally, the instant action raises a legal agency issue that does not require specialized knowledge or information intrinsic to the Board. Therefore, determining

- 9 -

whether Best Buy is a "contractor" as defined under the Code is not an area as to which the Board has specialized expertise and is an issue of statutory interpretation that is subject to *de novo* review by this Court. Wright, 275 Va. at 80-81, 655 S.E.2d at 9. Accordingly, the circuit court appropriately applied *de novo* review.

### D.  Interpretation of Code §§ 54.1-1100 and 54.1-1102(A)

Lastly, the Board asserts that the circuit court erred in its interpretation of Code §§ 54.1-1100 and 54.1-1102(A) and the related regulations of the Board when reviewing the Board's decision that Best Buy was acting as a general contractor. Specifically, the Board argues Best Buy's actions of signing a contract with the homeowner, exerting control over contractor and subcontractor, and entering into detailed contracts with contractor outlining standards of workmanship and customer service supported the Board's finding that Best Buy is a "contractor" under Code § 54.1-1100. Best Buy contends that it is not a "contractor" as defined under the Code because it does not perform, manage, or superintend contractor's work and it does not construct, remove, repair or improve buildings.

Code § 54.1-1102 states in relevant part "[t]he Board shall promulgate regulations not inconsistent with statute necessary for the licensure of contractors . . . ." Code § 54.1-1100, in turn, defines "Contractor" as,

> any person, that for a fixed price, commission, fee, or percentage undertakes to bid upon, or accepts, or offers to accept, orders or contracts for performing, managing, or superintending in whole or in part, the construction, removal, repair or improvement of any building or structure permanently annexed to real property . . . .

Moreover, "Though [Title 54.1] has remedial features, . . . it imposes restrictions upon a common trade or occupation, and it is in derogation of the common law and must be strictly construed." Sellers v. Bles, 198 Va. 49, 53, 92 S.E.2d 486, 489 (1956) (overruled on unrelated

- 10 -

grounds by <u>W. Woolard Mech. & Plumbing, Inc. v. Jones Dev. Corp.</u>, 235 Va. 333, 338, 367 S.E.2d 501, 504 (1988)).

The Board relies on <u>Bacigalupo v. Fleming</u>, 199 Va. 827, 102 S.E.2d 321 (1958), in support of its contention that Best Buy is a contractor. <u>Bacigalupo</u>, however, is distinguishable from the present case. In <u>Bacigalupo</u>, plaintiff contractually agreed to "supervise the management and construction of a home for the defendants." <u>Id.</u> at 833, 102 S.E.2d at 325. In the contract signed by both parties, the plaintiff referred to himself as "general contractor" and "supervisor." <u>Id.</u> at 830, 102 S.E.2d at 323. Both parties agreed that the plaintiff was "to be in charge of all the work during its progress, to explain the drawings and set off accurately for the other workmen the sizes, distances, and levels, for all parts of the building." <u>Id.</u> at 831, 102 S.E.2d at 323. Moreover, the plaintiff admitted "he kept the job going and was present at all times as 'Overseer' to see that each subcontractor and laborer did his job properly." <u>Id.</u> at 831, 102 S.E.2d at 324. The Supreme Court held that evidence proved plaintiff was "engaged 'in constructing or superintending the construction of' a structure . . . ." <u>Id.</u> at 833, 102 S.E.2d at 325.

In this matter, Best Buy was never present at the job site and merely signed a standard contract indicating contractor would be responsible for the installation of the dryer at Bender's residence. Additionally, the summary adopted in the final order of the Board found:

> [Contractor] contacts the customer to confirm the date and time of installation. [Contractor] subcontracts with an independent installer [subcontractor] to perform the gas appliance installation. Best Buy does not have any employees who are trained or licensed to install gas appliances. Further, Best Buy employees do not perform gas appliance installations in Virginia.

Likewise, Best Buy indicated at the IFFC that if any construction or work was necessary other than simply connecting the dryer, contractor or its subcontractor could contract separately to perform the work. Additionally, the agreement "is limited to the direct replacement of gas

- 11 -

appliances only" and if construction or more connections are required, "the customer may contract directly with [contractor] to have this work performed." Therefore, unlike the plaintiff in Bacigalupo, it cannot be said that Best Buy "manag[ed]," or "superintend[ed]" or "perform[ed]" construction of anything at Bender's home. No Best Buy employees visited the jobsite or provided oversight to the contractor. Moreover, if anything other than replacing the appliance is required, contractor must contract outside the original agreement with the customer. Therefore, the record contains no evidence of Best Buy "supervising," "performing" or "managing" the job. Contractor and subcontractor were responsible for the installation of replacement appliances.

Secondly, no evidence suggests that Best Buy's role in the sale and installation of gas dryers should be considered a "construction, removal, repair, or improvement." The agreement and the summary indicate "Best Buy's installation service is limited to the direct replacement of gas appliances only." Moreover, the summary states that if any construction or repair is necessary, contractor must contract outside of the original agreement. It follows that the replacement of an appliance is not "a construction, removal, [or] repair . . . of any building or structure permanently annexed to real property . . . ."

Neither is replacement of a gas dryer an "improvement of any building or structure permanently annexed to real property." The installation of a replacement gas dryer does not alter the use or purpose of the real estate. Moreover, a gas dryer, by its nature, is removable and can be removed without damaging the real estate. Improving a building or a building's fixture requires the permanent incorporation of materials into a building in such a way that the incorporated material becomes essential to the use and purpose of the building and cannot be removed without damaging the real property. See generally Jordan v. Sandwell, Inc., 189 F. Supp. 2d 406, 409, 414 (W.D. Va. 2002) (holding that a water-tower structure is an

improvement because it is a permanent structure that increases land value); Cooper Indus., Inc. v. Melendez, 260 Va. 578, 595-96, 537 S.E.2d 580, 590-91 (2000) (finding that a circuit breaker in an electrical system is equipment rather than an improvement); Taylor v. Wal-Mart Stores, Inc., No.2:99CV00068 (W.D. Va. Mar. 12, 2011) ("[Improvement] has been interpreted to comprise any addition or other change in the structure of a building calculated to add to its useable value."); Taylor Holding Corp. v. Clement, 178 Va. 223, 233, 16 S.E.2d 345, 349 (1941) ("where machinery is permanent in its character and essential to the purposes for which the building is occupied, it must be regarded as realty"); City of Newport News v. Warwick Cnty., 159 Va. 571, 604-05, 166 S.E. 570, 581 (1932) (fixture "depends on the nature of the use and character of the annexation and the intention of the parties . . . and [whether the item] may be removed without injury to the building . . .").

In Sellers, the Supreme Court interpreted the meaning of "improvement" under the former Title 54. 198 Va. at 54, 92 S.E.2d at 490. The Supreme Court found "improvement" to be "a comprehensive term, which includes in its meaning any development whereunder work is done and money expended with reference to the future benefit or enrichment of the premises." Id. at 55, 92 S.E.2d at 490 (internal citations omitted). The Court elaborated with the example that building a house should be considered an "improvement" while "[c]utting weeds, hauling off rocks, spreading fertilizer, or planting an orchard would each be an improvement, but not the kind covered by the statute." Id.

In this matter, the summary which was incorporated into the final order states "Best Buy's installation service is limited to the direct *replacement* of gas appliances only. It does not include installation of gas piping or fittings." (Emphasis added). The summary nevertheless concluded that the installation of the gas dryer was an "improvement" because "[o]nce there is a

- 13 -

connection between the appliance and the existing gas system, the appliance itself becomes annexed to real property."

The summary expressly states that the agreement is limited to the direct replacement of gas appliances. Furthermore, Best Buy and the summary explained that any additional work outside of mere replacement or installation of the gas dryer may be completed by contractor but it must be contracted to outside of the agreement. Thus, the record suggests that nothing permanent is added to buildings or structures under the agreement. Therefore, this Court does not agree with the Board's interpretation that replacing an appliance constitutes an improvement under the Code. Accordingly, this Court holds that the circuit court did not err in determining Best Buy is not a contractor under Code §§ 54.1-1100 and 54.1-1102(A).

IV. CONCLUSION

The circuit court did not err by allowing Best Buy's argument that it was not a contractor under the Code because it sold replacement gas dryers. That assertion was addressed by the Board and was not waived under Rule 5A:18. Furthermore, the circuit court did not err in applying *de novo* review on appeal. Determining Best Buy's status as a "contractor" in the context of this case, raises a legal issue of statutory construction to which the Board has no specialized expertise. Accordingly, the decision of the Board was not entitled to any special deference. Lastly, the circuit court did not err in its interpretation of Code §§ 54.1-1100 and 54.1-1102(A) when reviewing the Board's decision that Best Buy was acting as a general contractor. Therefore, the ruling of the circuit court is affirmed.

Affirmed.