## CIRCUIT COURT OF LOUISA COUNTY

William David Butler and
Pamela A. Butler

    v.

Creative Design Builders, Inc., et al.

             Case No. (Chancery) 4430


William David Butler and
Pamela A. Butler

    v.

TriCity Insulation, Inc.

             Case No. (Chancery) 4455

             August 7, 1991

By JUDGE JAY T. SWETT

This matter is before the court on the plaintiffs' motion for summary judgment against Steve A. Lloyd, t/a American Heating and Air Conditioning, Sears Contract Sales, and Jim Carpenter Co., Inc. At the July 2, 1991, hearing, the plaintiffs also moved for summary judgment against TriCity Insulation, Inc., in Chancery No. 4455. The court has consolidated the cases for purposes of resolving the plaintiffs' motions. For the reasons stated herein, the plaintiffs' motions for summary judgment are denied.

On December 21, 1989, plaintiffs entered into a construction contract with Creative Design Builders to

build a home on plaintiffs' property known as Lots 65 and 66, Overton Fork Subdivision, Cuckoo Magisterial District, Louisa County, Virginia. The original construction price was $153,528.00. On September 19, 1990, certain extras were added raising the total price by $3,153.87 to $156,681.87. Under the contract, Creative Design was to act as general contractor in the construction of ·the house. The work in question is of the type to be done only by a licensed Class A contractor.[1]

Creative Design Builders holds no Class A license. Virginia Code § 54.1-1115, in pertinent part, prohibits and makes the following acts a Class 1 misdemeanor: "(1) Contracting for or bidding upon the construction, removal, repair or improvements to or upon real property owned, controlled or leased by another person without a license; [and] (2) Attempting to practice contracting in this Commonwealth, except as provided for in this chapter." During the course of construction, Creative Design subcontracted with third parties, the co-defendants herein, for various portions of the construction. On May 1, 1991, without paying several of those subcontractors, Creative Design filed for bankruptcy. Several of the unpaid subcontractors had filed mechanic's liens on the plaintiffs' property. Plaintiffs here move for dismissal of those liens.

Virginia Code § 43.7(a) provides that:

> the amount for which a subcontractor may perfect a lien under this section shall not exceed the amount in which the owner is indebted to the general contractor at the time the notice is given, or shall thereafter become indebted to the general contractor upon his contract with the general contractor . . . It shall be an affirmative defense or affirmative partial defense, as the case may be, to a suit to perfect a lien of a subcontractor that the owner is

---

[1] "Class A contractors" perform or manage construction, removal, repair, or improvements when (i) the total value referred to in a single contract or project is $40,000.00 or more, or (ii) the total value of all such construction, removal, repair, or improvements undertaken by such person within any twelve-month period is $300,000.00 or more. Virginia Code Section 54.1-1100 (1950, as amended).

not indebted to the general contractor or is indebted to the general contractor for less than the amount of the lien sought to be perfected.

The plaintiffs argue that they were not indebted to the general contractor at the time they received notice of the subcontractor liens and rely on the penalty provisions of Va. Code § 54.1-1115(C). They contend this section provides them an affirmative defense to the placement of the liens of the defendants. A contract with a general contractor for Class A construction who does not hold a Class A construction license is unenforceable by the contractor against the owner, unless the contractor "gives substantial performance within the terms of the contract in good faith and without actual knowledge of the licensure requirements of this chapter." Va. Code § 54.1-1115(C); *Woolard Mechanical v. Jones Development*, 235 Va. 333, 338 (1988); *see also, Moore v. Breeden*, 209 Va. 111 (1968).

The issue presented here is whether a lien by a subcontractor is enforceable against the owner when the owner is not indebted to the general contractor due to an unlawful and voidable contract. Two separate but interacting public policies are involved in this case. On the one hand is the policy behind the licensing statute and the underlying voidability of contracts for noncompliance. The policy is:

to protect the public from inexperienced, unscrupulous, irresponsible, and incompetent contractors . . . and a contract made in violation of its provisions is void and there can be no recovery thereon. Enforcement of the contract is denied the unregistered contractor, not because of the nature of the transaction, but as a penalty for failing to comply with the registration statutes. *Massie v. Dudley*, 173 Va. 42, 3 S.E.2d 176; *Hancock Co. v. Stephens*, 177 Va. 349, 14 S.E.2d 332; *State Realty Co. v. Wood*, 190 Va. 321, 57 S.E.2d 102; *Bowen Electric Co. v. Foley*, 194 Va. 92, 72 S.E.2d 388; *Rohanna v. Vazzana*, 196 Va. 549, 84 S.E.2d 440.

*Bacigalupo v. Fleming*, 199 Va. 827, 832 (1958). On the other hand, the mechanic's lien law is "designed to protect subcontractors and creates a liability which would not otherwise exist." *Maddux v. Buchanan*, 121 Va. 102, 108 (1917). The owner may be liable to the subcontractor for labor and materials delivered but not paid for. But the subcontractor is protected only up to "the amount in which the owner is indebted to the general contractor at the time notice is given." Virginia Code § 43-7.

Here, we have a contractor which was unfortunate, if not irresponsible, in its business practices. Creative Design failed in the initial phase of its business-- licensing. A suit brought by it against the owner, if it knew of the licensing requirement, would be barred because it had no license. *Woolard Mechanical*, 235 Va. at 338. But here it is not known whether creative Design had actual knowledge of the licensing requirement. In *Woolard*, the Court has construed the licensing law "to penalize those whose violations of the statutory scheme are knowing, but to excuse those who perform in good faith and whose violations are inadvertent." 235 Va. at 239. Here, not only is it unknown whether there was a knowing breach of licensure requirement, but the plaintiffs seek to apply the penal aspect of the statute against subcontractors who are not covered by the statute.

The defendant subcontractors also argue that to release their mechanic's liens would unjustly enrich the owner. They claim that the mechanic's lien law exists to protect them. Yet why would it be more equitable to set aside the protection of the licensing laws afforded to the owner and leave intact the protection of mechanic's lien law for the benefit of the subcontractor? In *Maddux*, the Supreme Court suggested that a subcontractor has as much if not more opportunity to investigate whether a general contractor is solvent as does an owner. 121 Va. at 107. It follows that a subcontractor is perhaps equally, if not better, positioned to investigate a general contractor's compliance with the licensing law and the legality of its construction contract with the owner. Why should subcontractors who extend credit based on a voidable contract be favored when they just as easily could have inquired into licensure compliance? Subcontractors are presumably experienced

in the construction business while the owner here is assumed to be a one-time builder.

The proper way to construe these two statutes together is to incorporate the licensure provision as an additional defense available to the owner, but only if the defense could have been invoked against the general contractor. Thus, since this is a fact which must be proved if the plaintiffs are entitled to this affirmative defense, their motion for summary judgment must be denied.