110

## CIRCUIT COURT OF LOUDOUN COUNTY

Raymond F. Lower and
Patricia R. Lower

v.

Timothy D. Cranch,
d/b/a Quaker Homes, et al.

Case No (Chancery) 14826

BY JUDGE THOMAS D. HORNE

September 29, 1993

Petitioners seek to have the Court determine the validity of certain mechanics liens recorded against their property in conjunction with the construction of their home. Defendant Cranch, d/b/a Quaker Homes, is alleged to have acted as general contractor in conjunction with the project. The instant hearing was set to receive evidence regarding the assertion of the Petitioners that the liens of Cranch *and of the subcontractors filing liens for work done or materials furnished* are unenforceable by reason of Cranch's lack of licensure pursuant to Chapter 11 of Title 54.1 of the Code of Virginia, as amended. At the conclusion of Petitioners' evidence with respect to this matter, the various subcontractors and Cranch moved to strike the evidence of the Petitioners regarding the applicability of the provisions of § 54.1–1115 to the instant case. For the reasons set forth hereinafter, the Court will deny the motion of Cranch but grant the motion as to the Defendant subcontractors.

It is first to be noted that the subcontractors have each filed liens against the property which they seek to enforce. The Defendant subcontractors do not assert derivative claims through the general contractor. § 43–18, Code of Virginia, as amended. Petitioners seek to bar

recovery as to such subcontractors based upon the general principle that:

> the amount for which a subcontractor may perfect a lien under this section shall not exceed the amount in which the owner is indebted to the general contract at the time the notice [to the owner] is given, or shall hereafter become indebted to the general contractor upon his contract with the general contractor for such structure or building . . . .

§ 43–7, Code of Virginia.

Thus, the Petitioners argue that as the general contractor, Cranch/Quaker Homes, had not obtained a Class A contractor's license at the time the contract was executed and work done, his lien is unenforceable. Being unenforceable, no amount would be owed by the owner to the general contractor. Therefore, the argument continues, no amount would be due the subcontractors by the owner because the subcontractors are limited in the amount in which they might perfect their liens to those amounts due the general contractor by the owners, which in this case would be $0.00.

Pursuant to § 54.1–1115(C), it is further provided that:

> [n]o person shall be entitled to assert the lack of licensure as required by this chapter as a defense to any action at law or suit in equity if the party who seeks to recover from such person gives substantial performance within the terms of the contract in good faith and without actual knowledge of the licensure requirement of this chapter.

With respect to Cranch and Quaker Homes, the Court finds sufficient evidence, when looked at in a light most favorable to the Petitioners, from which it may reasonably conclude that Cranch was aware of the licensing requirements and was not acting for and on behalf of a properly licensed contractor. However, the evidence is devoid of any evidence that any of the subcontractors failed to give substantial performance, lacked good faith, were improperly licensed, or had actual knowledge of the licensing requirements of Chapter 11 of Title 54.1. There is no evidence from which the Court might conclude that the Petitioners were actually aware of any lack of licensure by Cranch or of the licensing requirements as applied to him.

Statutes should be harmonized with one another. Thus, where the provisions of one statute are of a general nature when contrasted with

those of another which are more specific, the more specific prevails. *Huddler* v. *Cole*, 236 Va. 389 (1988). In this case, a "person" (the owner) seeking to assert the protection of § 54.1–1115(A) as a defense to a claim for damages need not contract directly with the "party" (the subcontractor) who seeks to recover. Conversely, the innocent "party" (the subcontractor) whose claims are allowed under § 54.1–1115(C) need not contract directly with the "person" (the owner) in order to avoid the impact of a failure by either the contractor or the subcontractor "party" to obtain a license.

On the other hand, § 43–7 specifically relates to amounts owed to the owner by the general contractor. Under § 43–1, a general contractor is defined:

> to include contractors, laborers, mechanics, and persons furnishing materials, who contract directly with the owner . . . .

A subcontractor is defined so as to:

> include all such contractors, laborers, mechanics, and persons furnishing materials, who do not contract with the owner but with the general contractor.

To the extent an ambiguity exists in attempting to reconcile the liability limiting provisions of § 43–18 with savings provisions of § 54.1–1115(C), as applied to innocent subcontractors seeking enforcement of properly perfected liens, where amounts due the subcontractors by the owners do not exceed the amount owed the general contractor by the owners at the time notice is given by the subcontractors to the owners, the Court must be guided by the specific limitations of the provisions relating to licensure. The public policy considerations expressed in the licensing statutes are not the same as those contained in the mechanics' lien law. In the former, the legislature has sought to protect the public by penalizing contractors who knowingly ignore the requirements of licensure. *J. W. Woolard Mech. & Plumbing, Inc.* v. *Jones Dev. Corp.*, 235 Va. 333 (1988). In the case of the latter, the General Assembly has sought to allocate the risk of nonpayment to the subcontractor rather than an owner who has satisfied his financial obligations to contractor. *Nicholas* v. *Miller*, 182 Va. 831 (1944).

The Court agrees with many of those policy considerations discussed by the Court in *Butler* v. *Creative Design Builders, Inc.*, 24 Va. Cir. 362 (1991). Were the evidence to demonstrate that the subcontrac-

tors were not properly licensed, and if not properly licensed, they failed to render substantial performance, lacked good faith, or had knowledge of the licensing requirements (either their own or those of the general contractor), the result might well be different in this case. Thus, were the subcontractors shown (which has not been) to have actual knowledge that the contractor was not properly licensed, even were they to be properly licensed themselves, such knowledge, coupled with actual knowledge of the requirements of licensure as applied to the general contractor would bar recovery. Petitioners have alluded to no common law duty or duty imposed by statute upon a subcontractor to determine whether a contractor is properly licensed prior to commencing work in order to recover for work done by them under their contract with the general contractor. It is important to keep in mind the unique procedural posture in which this challenge to a legal defense to a failure of licensure is raised by the owner in a challenge to the validity of the liens. This action seeks to test the ability of the lien claimants to recover prior to the initiation of enforcement proceedings.

Accordingly, the motions to strike by the various subcontractors (Refrigeration Systems, Inc., Masonry Design, Inc., T. O. Costello, Myers Lumber Co., Inc., Claude Bucher, d/b/a Bucher Roofing) to the claim for a failure of licensure by Cranch is granted as to the limited issue before the Court for review. The motion to strike of Cranch, d/b/a Quaker Homes, is denied.

The case will be continued.

### October 21, 1993

The Court has previously determined in this case that various subcontractors who furnished work or materials in connection with the construction of Petitioners' home were not precluded from enforcing their mechanic's liens by reason of any lack of licensure by the general contractor. This finding is reflected in the earlier Memorandum Opinion dated September 29, 1993, filed among the papers in this cause. Reference is herewith made to that opinion and the conclusions stated therein.

That memorandum opinion followed motions to strike made by the subcontractors and the general contractor at the conclusion of the presentation of evidence by the Petitioners. For the reasons earlier stated by the Court, the motions were granted as to the subcontractors but

denied as to Timothy D. Cranch, d/b/a Quaker Homes. Mr. Cranch then produced evidence concerning his relationship to Countryside Developers, Ltd., in connection with the construction of the Lowers' home and of the implications of the savings provisions of § 54.1–1115 upon his right to recover in this case.

Counsel for the general contractor relies in part upon the holding in *J. W. Woolard Mechanical and Plumbing v. Jones Development*, 235 Va. 333 (1988), in support of his claim that his failure to obtain a Class A contractor's license should not bar him from enforcing his lien. In *Woolard*, the Court was asked to interpret the predecessor to the statute under consideration. That statute provided, *inter alia*, that:

> No person shall be entitled to assert this section as a defense to any action at law or suit in equity if the party who seeks to recover from such person gives substantial performance within the terms of the contract in good faith and without actual knowledge *of this section*. [Emphasis added.] § 54–142, Code of Virginia.

As the Court noted in *Woolard*, in 1985 the statute was amended by substituting the words "of the licensure and registration requirements of this article" for "of this section." Whereas in *Woolard*, the Court found a misunderstanding of the implications of the statute as it related to a failure to license a corporate contractor was sufficient to justify exemption and recovery, the present statute admits of no such exemption.

The evidence in this case demonstrates that Timothy Cranch, d/b/a Quaker Homes, was acting on his own in the construction of the Petitioners' home. He is the person who undertook to construct the home. *Bacigalupo v. Fleming*, 199 Va. 827 (1958). He had neither actual nor apparent authority to contract on behalf of Countryside Developers, Ltd., with Dr. and Mrs. Lower. Timothy Cranch and Quaker Homes were not the agents or employees of Countryside in connection with this project. § 54.1–1103, Code of Virginia. The use of Countryside and its Class A license in obtaining the building permit was a matter of convenience to Quaker Homes. It was only after he had ceased work on the home that Mr. Cranch obtained the Class A contractor's license necessary to undertake the construction of the home for the Lowers.

Mr. Cranch had actual knowledge of the licensing and registration requirements of the statute. Lack of licensure is a valid defense to the

claim of Mr. Cranch. The contract is voidable at the instance of the Lowers. They have elected to avoid the contract. Consequently, the lien of Mr. Cranch is unenforceable and invalid.

Mr. Byrd may draw an Order consistent with this opinion to which Mr. Moorstein may note his exception. The Order shall direct that the memorandum be removed from the record. § 43–17.1, Code of Virginia.